608 P.2d 83

**STATE of Arizona, Appellee,**

v.

**Margaret ACOSTA, Appellant.**

**No. 1 CA–CR 3867.**

Court of Appeals of Arizona,
Division 1,
Department C.

Jan. 22, 1980.

Rehearing Denied Feb. 27, 1980.

Review Denied March 18, 1980.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Diane M. Ramsey, Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by John Foreman, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

This appeal calls into question the constitutionality of the use of voter registration lists in impaneling grand juries.

The underlying facts are not in material dispute. Appellant-defendant, Margaret Acosta (nee Weisel), was indicted by a Maricopa County Grand Jury for the unlawful furnishing of a narcotic drug in violation of A.R.S. §§ 36–1002.02 and 36–1002.10. The facts giving rise to the indictment are that the defendant was an inmate at the Arizona State Women's Prison on April 27, 1978. On that date, prison guards observed Delphina Estrada, also an inmate, pass an envelope to another inmate, Lupe Morales, in the exercise yard. When Morales was searched, a sealed envelope was found which contained two marijuana cigarettes, a plastic package containing .178 grams of between one and two percent heroin and a handwritten note signed "Marty". Subsequent handwriting analysis revealed the note was in the handwriting of the defendant.

Following the filing of the indictment, the defendant filed a motion for a new determination of probable cause based on the allegation that the 21st Maricopa County Grand Jury which indicted her was selected in a constitutionally impermissible manner as it discriminated against Mexican-Americans and young people. Following a hearing on this motion, it was denied by the trial court on October 30, 1978.

On December 11, 1978, the defendant waived a jury trial and agreed to be tried by the trial court based upon stipulated evidence consisting primarily of police reports. The defendant was convicted on this evidence and on January 2, 1979, was sentenced to serve not less than two nor more than five years in the Arizona State Prison, her sentence to run from January 2, 1978 and to be served concurrently with the sentence already being served. No error is claimed as to the jury waiver, the trial by stipulated evidence, the sufficiency of the evidence to convict, or the sentence.

The evidence presented at the hearing on the motion for a new determination of probable cause showed that based upon census figures, 14.6 percent of Maricopa County's total population is Mexican-American. Similarly, 19.9 percent of the county's population is between the ages of 18 and 24. In addition, the defendant presented statistics from the first 21 Maricopa County Grand Jury lists (defendant was indicted by the 21st) which revealed that by counting Spanish surnames and ages of jurors, the original jury panel contained 5.5 percent Mexican-Americans and 11 percent people between the ages of 18 and 24. These statistics also revealed that of the grand jurors actually chosen to sit, 7.1 percent were Mexican-American and 10.7 percent were between the ages of 18 and 24.

These figures reveal that there are only 37.7 percent of the number of Mexican-Americans on the grand jury panels and 48.6 percent of the number of Mexican-Americans on the final grand juries that would appear if the selection process represented the population as a whole.

Likewise, there were only 55.3 percent of the people between the ages of 18 and 24 on grand jury panels and 53.8 percent of the same group on final grand juries that would appear if the selection process represented the population as a whole.

The evidence further showed that prospective grand jurors are selected from voter registration lists pursuant to A.R.S. § 21–301,[1] by a computerized random selection process. It is tacitly conceded that this computerized process does not allow subjec-

---

1. Effective July 1, 1980, jury lists will consist of voter registration lists, registered automobile driver lists, "and persons from other lists as determined by the supreme court." A.R.S. § 21–301 as amended Laws 1978, Ch. 154 § 2.

tive internal tampering.[2] Also evidence was produced, through an affidavit of an associate professor of Political Science at the University of Arizona, that "[t]here have been numerous studies in the scientific literature since 1970 which have shown that all minority groups including people of Spanish heritage tend to register to vote in significantly lower percentages than White Americans," and that "[t]he scientific literature also indicates that young people tend to register and vote less often by percent than older adults."

Based upon this evidence, the trial court made factual findings that Mexican-Americans "are substantially underrepresented on the Maricopa County Grand Jury" and "that the reasons for the underrepresentation of Mexican-Americans on the grand jury is that relatively fewer Mexican-Americans register to vote than do members of some other ethnic groups." The trial judge concluded that such "voluntary nonregistration" did not make the random jury selection system constitutionally infirm.

The defendant has appealed, raising solely the issue of the constitutionality of the use of a voter registration list system in the selection of the grand jurors who indicted her.

In support of this issue, the defendant's basic contentions on appeal are: (1) she has standing to raise this issue; (2) Mexican-Americans and persons between the ages of 18 and 24 are cognizable groups for the purpose of determining unconstitutional discrimination; (3) the evidence shows that these "cognizable groups" were substantially under-represented in the Maricopa County Grand Jury selection; and (4) the state has not rebutted this prima facie showing of discrimination.

The state's basic contention, while attacking the defendant's standing and statistical analysis, is that the age grouping of 18 to 24 is not a "cognizable group" and that the voter registration system utilized negates any "discriminatory purpose" and thus is constitutionally sound.

The starting point for analyzing these various contentions is the last United States Supreme Court decision dealing with discrimination in a grand jury selection, *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). In *Castaneda*, the United States Supreme Court held that it is a denial of equal protection to try a defendant under an indictment where a recognizable, distinct class is substantially under-represented on the grand jury and the under-representation is a result of purposeful discrimination.

■ As pointed out in *Castaneda*, in order to make a prima facie case of an equal protection violation, the defendant must show that (1) the group under-represented "is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied" and (2) "the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time." 430 U.S. at 494, 97 S.Ct. at 1280, 51 L.Ed.2d at 510. Finally, "a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing." *Id.* Once this prima facie showing is made, the burden shifts to the state to rebut that case.

Essential to a proper resolution of this case is a determination of whether a statistical showing alone is sufficient to make a prima facie case, that is, is it the defendant's burden to show "purposeful discrimination." Before turning to this essential question, we will deal with the state's collateral attacks on the defendant's standing and the statistical analysis.

■ The state first intimates that since the defendant is not of Mexican heritage, her maiden name being Weisel, she is precluded from raising equal protection argu-

---

2. For a description of this system, see Note, *Juries and Jurors in Maricopa County*, 1973 L. & Soc. Ord. 183, 184.

ments based on under-representation of this class. Even if we were to ignore the fact that the defendant never appeared before the grand jury and she was presented to that group as "Margaret Acosta," it is now clear that any person may challenge the underrepresentation of any cognizable group in a grand or petit jury that passes upon his or her case. *Duren v. Missouri*, 439 U.S. 357, 359 n.1, 99 S.Ct. 664, 666, 58 L.Ed.2d 579, 583 (1979). Moreover, it is clearly established that Mexican-Americans are a cognizable group for the purpose of invoking equal protection arguments. *Castaneda v. Partida, supra*, 430 U.S. at 495, 97 S.Ct. at 1280, 51 L.Ed.2d at 511.

The state also intimates that the statistical data may be misleading as it does not distinguish between persons having Spanish surnames who are American citizens and those who are not. The simple answer to this is that the state never attacked the statistical data on this basis before the trial court. Also, the statistical method of proof employed by the defendant in this case is precisely the same method of proof utilized and approved by the United States Supreme court in *Castaneda*. In addition, the trial court found as a fact that Mexican-Americans are substantially under-represented on the Maricopa County Grand Jury, a factual determination that is amply supported by the record.

■ The trial court apparently was of the opinion that an age grouping of between 18 and 24 years was not a cognizable group for equal protection purposes. The weight of authority supports this conclusion. *United States v. Kleifgen*, 557 F.2d 1293 (9th Cir. 1977); *United States v. Potter*, 552 F.2d 901 (9th Cir. 1977); *United States v. Gast*, 457 F.2d 141 (7th Cir.), *cert. denied*, 406 U.S. 969, 92 S.Ct. 2426, 32 L.Ed.2d 668 (1972); *United States v. Kuhn*, 441 F.2d 179 (5th Cir. 1971).

It has been noted that for a group to be cognizable:

"[T]he group must have cohesion. There must be a common thread which runs through the group, a basic similarity in attitudes or ideas or experience which . . . cannot be adequately represented if the group is excluded from the jury selection process. . . . [T]he group must have a community of interest which cannot be adequately protected by the rest of the populace." *United States v. Guzman*, 337 F.Supp. 140, 143–44 (S.D.N.Y.), *aff'd*, 468 F.2d 1245 (2d Cir. 1972), *cert. denied*, 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973).

The demographics simply do not place all "young people" into this type of category. We are all aware of the 18 year old who is going on 45 and conversely the 45 year old who is really 18. In short, there is no recognizable "common thread" among a group whose sole identifiable characteristic is that the members fall between the ages of 18 and 24. We therefore hold that for jury selection, equal protection purposes, persons between the ages of 18 and 24 are not a cognizable group.

■ Before discussing the core of this problem, it is important to identify what amendment to the United States Constitution is involved. In her briefs before this court the defendant has consistently contended that her rights under the Sixth Amendment[3] have been violated. A reading of that Amendment makes it clear that it is dealing with petit trial juries, not grand juries. Grand juries are the subject matter of the Fifth Amendment, but that Amendment is not applicable to the states. *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). As pointed out by Justice Powell in his dissent in *Castaneda*:

"But in a state case in which the challenge is to the grand jury, only the Fourteenth Amendment applies, and the defendant has the burden of proving a violation of the Equal Protection Clause." 430 U.S. at 510, 97 S.Ct. at 1288, 51 L.Ed.2d at 520.

3. The Sixth Amendment to the United States Constitution, provides in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public *trial*, by an impartial jury of the State . . ." (Emphasis added.)

Apparently the majority of the Supreme court does not disagree with Justice Powell's analysis concerning which amendment is involved. As is noted in the majority opinion in *Duren v. Missouri, supra*, 439 U.S. at 368 n.26, 99 S.Ct. at 670, 58 L.Ed.2d at 589:

"[P]etitioner and the United States, as *amicus curiae*, cite *Castaneda v. Partida*, 430 U.S. 482, 496, 97 S.Ct. 1272, 1281, 51 L.Ed.2d 498 (1976); *Alexander v. Louisiana*, 405 U.S. 625, 629, 92 S.Ct. 1221, 1224, 31 L.Ed.2d 536 (1972); *Turner v. Fouche*, 396 U.S. 346, 359, 90 S.Ct. 532, 539, 24 L.Ed.2d 567 (1970) and *Whitus v. Georgia*, 385 U.S. 545, 552, 87 S.Ct. 643, 647, 17 L.Ed.2d 599 (1967). Those *equal protection* challenges to jury selection and composition are not entirely analogous to the case at hand [i. e., a Sixth Amendment challenge to a petit jury]." (Emphasis added.)

This distinction becomes important, at least under the United States Supreme Court analysis, since it bears upon the quantum of proof required of a defendant in grand jury selection challenges. The quoted footnote from *Duren* points this out, by continuing:

"In the cited cases [i. e., *Castaneda, Alexander, Turner* and *Whitus*], the significant discrepancy shown by the statistics not only indicated discriminatory effect but also was one form of evidence of another essential element of the constitutional violation—discriminatory purpose. Such evidence is subject to rebuttal evidence either that discriminatory purpose was not involved, or that such purpose did not have a determinative effect. [Citations omitted]. In contrast, in Sixth Amendment fair-cross-selection cases, systematic disproportion itself demonstrates an infringement of the defendant's interest in a jury chosen from a fair community cross section. The only remaining question is whether there is adequate justification for this infringement." *Id.*

Having determined that what is involved in state grand jury selection dis-crimination cases is the Equal Protection Clause of the Fourteenth Amendment, we turn to our initial inquiry of whether statistical data which indicates a substantial under-representation of a cognizable class, standing alone, is sufficient to establish an essential element of an equal protection violation—discriminatory purpose. We are of the opinion it does not.

As background for this inquiry, the following general principle applicable to Fourteenth Amendment Equal Protection Clause cases is helpful:

"Our decision last Term in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), made it clear that official action will not be held unconstitutional solely because it results in a racially disproportionate impact. 'Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination.' *Id.*, at 242, 96 S.Ct., at 2049. Proof of a racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 264–65, 97 S.Ct. 555, 563, 50 L.Ed.2d 450, 464 (1977).

This "something other" than statistical data is noted by Justice Marshall in his concurring opinion in *Castaneda*:

"Second, there is testimony concerning the grand jury selection system employed in this case. That testimony indicates that the commissioners who constructed the grand jury panels had ample opportunity to discriminate against Mexican-Americans, since the selection system is entirely discretionary and since Spanish-surnamed persons are readily identified.

\*    \*    \*    \*    \*    \*

"In every other case of which I am aware where the evidence showed *both* statistical disparity *and* discretionary selection procedures, this Court has found that a prima facie case of discrimination was established . . . ." (Emphasis added.) 430 U.S. at 501–02, 97 S.Ct. at 1284, 51 L.Ed.2d at 515.

The majority in *Castaneda* also viewed the selection system itself as crucial. After rejecting the "governing majority" theory embraced by the dissenters, Justice Blackmun, writing for the majority, noted:

"Rather than relying on an approach to the jury discrimination question that is as faintly defined as the 'governing majority' theory is on this record, we prefer to look at all the facts that bear on the issue, such as the statistical disparities, *the method of selection,* and any other relevant testimony as to the manner in which the selection process was implemented." (Emphasis added.) 430 U.S. at 500–01, 97 S.Ct. at 1283, 51 L.Ed.2d at 514.

The conclusions of the majority members of the Supreme Court are consistent with prior pronouncements of that Court. For example, in *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), a grand jury selection case, it was noted:

"This Court has never announced mathematical standards for the demonstration of 'systematic' exclusion of blacks but has, rather, emphasized that a factual inquiry is necessary in each case that takes into account all possible explanatory factors. The progressive decimation of potential Negro grand jurors is indeed striking here, but we do not rest our conclusion that petitioner has demonstrated a prima facie case of invidious racial discrimination on statistical improbability alone, *for the selection procedures themselves were not racially neutral.*" (Emphasis added.) 405 U.S. at 630, 92 S.Ct. at 1225, 31 L.Ed.2d at 541–42.

■ From the foregoing discussion we, as state judges, conclude that in Fourteenth Amendment equal protection cases raising the issue of substantial under-representation of cognizable groups, the defendant in order to establish a prima facie case of discrimination must not only show the group is cognizable and that substantial under-representation occurs, but must also show that the under-representation is for a discriminatory purpose, that is, "a racially discriminatory intent." *Arlington Heights v. Metropolitan Housing Development Corp., supra.*

■ As we have previously stated, the statutory method of grand jury selection utilized in Maricopa County does not provide the essential element of discriminatory purpose or intent as it is admittedly a racially neutral system. However, we are not content to end our inquiry here for it appears to us that even a facially neutral system can result in intentional discrimination if it knowingly produces a given result. For example, it appears to us that if the state legislature in the 1920's wished to exclude females from participating in jury selections, it could have adopted a system that drew jury lists from lists of registered automobile drivers, a facially neutral system. However, women drivers in the 1920's were the exception rather than the rule. The defendant voices that argument here. As she states in her opening brief:

"The state . . . has been knowingly or negligently using a system which will insure that a lower proportion of Mexican-Americans and other minorities will be available to be chosen for grand juries and trial juries in Arizona." Appellant's Opening Brief at 10.

■ The problem with this contention is that the defendant's proof in this area simply does not support her conclusory assertion of "knowing or negligent" discrimination. As previously indicated, defendant's proof was that since 1970, scientific studies revealed that Mexican-Americans tend to register to vote in lesser percentages than whites. Nineteen-seventy was the year the legislature adopted the voting registration list method of selection of jurors. Following that adoption, state and federal courts have repeatedly held that jurors randomly drawn from voter registration lists, pass constitutional muster. *United States v. Huber,* 457 F.Supp. 1221 (S.D.N.Y.1978); *United States v. Gaona,* 445 F.Supp. 1237 (W.D.Tex.1978); *State v. Lee,* 114 Ariz. 101, 559 P.2d 657 (1976); *see United States v. Test,* 550 F.2d 577 (10th Cir. 1976).

In view of the fact that the defendant's proof showed that the scientific data upon which she relies only became available the same year that the selection system was adopted, and that this system has repeatedly been held constitutionally sound, we are drawn to no other conclusion but that the voter registration list selection system was not adopted for a discriminatory purpose.

Moreover, in 1978 (effective June 1, 1980) the legislature adopted an expanded list system which adds other sources from which names of jurors are to be chosen. Whether this was motivated by a desire to expand community involvement in the jury system or to seek more active participation in the voting process (some theorists suggest that because of the supposed onerous burden of jury service, qualified individuals were failing to register to vote) is immaterial. What is material is that it is clear that the Arizona legislature did not adopt the 1970 jury selection system for a discriminatory purpose.[4]

The defendant has also argued that simply because Mexican-Americans opt not to register to vote, these individuals, by their non-action cannot waive her right to a representative grand jury. This argument becomes immaterial when we hold, as we do here, that the system adopted, regardless of the "no-shows," is not violative of the Equal Protection Clause of the Fourteenth Amendment.

Judgment and sentence affirmed.

HAIRE, P. J., and CONTRERAS, J., concurring.

4. It is noted that the 1970 voter registration amendment changed Arizona's voting system from one in which the board of supervisors selected jurors, a process subject to subjective manipulation. See former A.R.S. § 21–301.