751 P.2d 983

**STATE of Arizona, Appellee,**

v.

**Tom CASTILLO, Appellant.**

**No. 2 CA–CR 4735.**

Court of Appeals of Arizona, Division 2, Department B.

Dec. 17, 1987.

Review Denied April 12, 1988.

Robert K. Corbin Atty. Gen. by William J. Schafer III and R. Wayne Ford, Phoenix, for appellee.

Harold L. Higgins, Jr., Pima County Public Defender by Rebecca A. McLean, Tucson, for appellant.

## OPINION

ROLL, Judge.

Appellant Tom Castillo was convicted by a jury of one count of unlawful sale of a narcotic drug and sentenced to 10.5 years' incarceration. He now appeals that conviction.

### FACTS

Two Tucson Police Department officers assigned to the Metropolitan Area Narcotics Squad testified that they had contact with Castillo between February and June of 1985, and that on June 5, 1985, Castillo sold them two papers of heroin for $40.00. Because the sale took place as part of an undercover investigation, Castillo was not indicted until February 20, 1986. On April 2, 1985, Castillo had been arrested at Montgomery Ward in the El Con Mall on theft charges and, before he stood trial on the drug sale charge, pled guilty to a charge of theft by control over $500.00. At that time he also pled guilty to charges of attempt to commit theft over $1,000.00, and theft by

control over $250.00 stemming from other incidents.

The first time Castillo stood trial, the jury was unable to reach a verdict. At his second trial, approximately one month later, Castillo was found guilty.

## ISSUES ON APPEAL

On appeal, Castillo argues that the prosecutor impermissibly used undisclosed documents for impeachment purposes during cross-examination of Castillo and that the prosecutor violated principles articulated in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by using peremptory challenges to remove four individuals of Hispanic descent from the panel.

## IMPEACHMENT OF DEFENDANT

■ Castillo argues that the prosecutor used Castillo's undisclosed statements for impeachment in violation of Rule 15.1(a)(2), Ariz.R.Crim.P., 17 A.R.S. The undercover agents who testified that Castillo sold them heroin on June 5, 1985, also testified to having had several other meetings with Castillo between February 11, 1985, and June 5, 1985.

At both the first and second trials, Castillo's defense was mistaken identification. At the first trial, Officer Kurt Kreutz testified that he met Castillo when Castillo lived at 130 West Pennsylvania. Castillo testified that he had never lived at 130 West Pennsylvania.

At Castillo's second trial, the prosecutor did not specifically ask Officer Kreutz if he had met Castillo at 130 West Pennsylvania. However, on cross-examination, defense counsel asked the officer if it were not true that the officer believed that he had met Castillo at that address. Defense counsel then called as a witness the owner of the property at 130 West Pennsylvania, who testified that she never rented the premises to Castillo. Castillo claimed that the officer's mistake as to his place of residence was but one of many evidentiary items establishing misidentification.

Castillo himself testified that he had never lived at, nor been to, 130 West Pennsyl-

vania. During Castillo's testimony, his attorney drew the sting regarding Castillo's prior convictions for theft. On cross-examination, the prosecutor asked Castillo if, when he was arrested on the theft charges on April 2, 1985, he told the arresting officer, jail officials, and a pretrial release official that he lived at 130 West Pennsylvania. Although the arrest information sheet in connection with Castillo's arrest for theft was not introduced into evidence, it was marked as an exhibit and utilized by the prosecutor to cross-examine Castillo regarding his place of residence on April 2, 1985.

After the prosecutor completed cross-examination of Castillo, defense counsel moved for a mistrial based on impeachment by insinuation and the utilization of nondisclosed impeachment evidence. During argument on the motion and in the absence of the jury, the prosecutor produced, in addition to the arrest information sheet which was actually marked as an exhibit, the April 2, 1985 police report in connection with Castillo's arrest for theft and the April 3, 1985 pretrial services statement in connection with that arrest, both of which reflected his address as 130 West Pennsylvania.

In denying the motion for mistrial, the trial court stated:

[I]f there were no basis at all for his having asked the questions that he did, then I might be inclined to agree with you. But since there is documentation as a basis for all of the questions that he asked, there, so as far as I can see, is no basis for a mistrial to be granted, so the motion is denied at this time.

A different attorney represented Castillo in connection with the theft matter than represented him at his two trials for sale of heroin.

Although the state argues on appeal that there was no necessity for the prosecutor to disclose the documents complained of until after the defendant testified that he did not live at 130 West Pennsylvania "because their necessity became known to the prosecutor only during the cross-examination of the defendant," this does not accu-

rately reflect the record. At Castillo's first trial, he testified that he did not live at 130 West Pennsylvania. During the opening statement at Castillo's second trial, his attorney mentioned that whether Castillo lived at 130 West Pennsylvania would be an issue. Accordingly, particularly in view of the misidentification defense, the prosecutor well knew that whether Castillo lived at 130 West Pennsylvania would be an issue during the trial. This is further established by what appears to be a deliberate tactic on the part of the prosecutor in not asking Officer Kreutz during direct examination at the second trial whether he had come into contact with Castillo at 130 West Pennsylvania.

We note that in the disclosure material furnished to defense counsel, at least one report reflects Castillo's last known address as 130 West Pennsylvania. One such report describing 130 West Pennsylvania as Castillo's last address refers to his arrest for theft. During an interview of Kreutz by defense counsel prior to Castillo's first trial, Kreutz stated that on February 11, 1985, he had contact with Castillo at Castillo's house at 150 (sic) West Pennsylvania. In that same interview, the following exchange took place between Kreutz and defense counsel:

Q What was the address that you had back in April of '85 at Montgomery Wards? [sic]

A I have to look at that report. (PAUSE) Let's see, 130 West Pennsylvania.

Based on the information available to defense counsel in the discovery material in connection with the narcotics sale and, more importantly, during defense counsel's interview of Kreutz, we cannot say that defense counsel was surprised or unfairly prejudiced by the prosecutor's questioning of Castillo about his April 2, 1985, statements regarding his residence at that time.

### PROSECUTOR'S EXERCISE OF PEREMPTORY CHALLENGES

■ The prospective jury panel for Castillo's second trial included six individuals of Hispanic descent. The prosecutor exercised his peremptory challenges to strike four of these individuals. The remaining two Hispanic individuals ultimately served as jurors.

Castillo maintains that the prosecutor violated the principles announced in *Batson v. Kentucky, supra,* in striking the four above-mentioned jurors. In *Batson,* the Supreme Court held that the state cannot exercise its peremptory challenges so as to strike potential jurors solely on account of their race. 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The trial court called upon the prosecutor to explain his reasons for exercising his peremptory challenges in the manner he did. The prosecutor stated that he struck a Hispanic juror with a non-Hispanic surname because of her age. She was 20 years old at the time. The prosecutor indicated that he had not even noted that this individual's maiden name was Hispanic. Age is a permissible factor to be considered in the exercise of peremptory challenges, particularly in the context of drug prosecutions.

The prosecutor said that he struck a second Hispanic female from the jury because of her relative youthfulness, 21 years, and the fact that she had participated in returning a verdict of not guilty in a shoplifting case. Castillo points out that another prospective juror who had returned a verdict of not guilty in a murder prosecution was not struck by the prosecutor. While we note that the prosecutor concluded that this other prospective juror was preferable because he wore a tie and was very conservative in appearance, was twice the age of the struck juror and was an engineer, we do not believe that *Batson* requires a comparison between the jurors who are excused from a panel and all of the other prospective jurors remaining on the panel.

A third prospective juror was the mother-in-law of a friend of the investigating officers, and the prosecutor was advised by the officers that she had a predilection against the state. Castillo concedes that she was justifiably challenged because of the information in the prosecutor's possession.

The fourth individual removed by the prosecutor was struck because of her "hes-

itant manner." The trial judge agreed that this prospective juror did display hesitancy and an apparent lack of understanding of the proceedings. Although defense counsel again points to similar hesitancy on the part of other prospective jurors, we again reject this invitation to compare characteristics. The exercise of peremptory challenges by any trial lawyer necessarily involves careful study and interpretation of the mannerisms of the prospective jurors and the use of professional judgment gained through experience.

The trial court found that the reasons for striking the jurors were neutral, clear, and reasonably related to the case. The court's determination is to be given great deference because it turns on an evaluation of credibility. *United States v. Woods*, 812 F.2d 1483, 1487 (4th Cir.1987); *United States v. David*, 803 F.2d 1567, 1571 (11th Cir.1986). We note that this case was heard by a very experienced trial judge. We cannot find that the trial court erred in determining that the factors articulated by the prosecutor were unrelated to ethnicity.

We affirm.

LIVERMORE, P.J., and
FERNANDEZ, J., concur.