760 P.2d 589

**STATE of Arizona, Appellee,**

v.

**Clarence A. JACKSON, Appellant.**

**No. 1 CA–CR 11724.**

Court of Appeals of Arizona, Division 1, Department D.

March 29, 1988.

Redesignated as Opinion and Publication Ordered May 5, 1988.

Review Denied Sept. 20, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div. and Paul J. McMurdie, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Spencer D. Heffel, Deputy Public Defender, Phoenix, for appellant.

## MEMORANDUM DECISION *

CONTRERAS, Judge.

Appellant was convicted by a jury of two counts of sale of a narcotic drug, class 2 felonies, committed while on parole. He was sentenced to the minimum term of 15.75 years on each count, sentences to run concurrently. On appeal, appellant raises three issues:

(1) Did the court err by permitting the prosecutor to peremptorily strike two black persons on the jury panel?

* EDITOR'S NOTE: Redesignated as an opinion.

(2) Was it error for the trial court to deny appellant's motion for mistrial following prior bad act testimony?

(3) Did the trial court abuse its discretion in denying appellant's motion for a one-day continuance?

We affirm. Briefly, the facts most favorable to sustaining the verdict, *State v. Harrison,* 111 Ariz. 508, 533 P.2d 1143 (1975), follow.

While working in an undercover capacity, police officers were approached by appellant who asked whether the officers were looking for some "rock" (street term for cocaine). The officers responded affirmatively. Appellant then entered the officers' vehicle and directed them to the location of his connection. Upon arrival, appellant took $50 from one of the officers and then went into an apartment complex at that location. Approximately five minutes later, appellant returned and gave the officers the cocaine. Appellant told the officers that he made his living "selling cocaine all day and all night along Monroe." One of the officers gave appellant his pager number, and approximately one week later appellant contacted the officer. Appellant said he had "rocks" to sell and wanted to know if the officer was interested in purchasing them. The officer indicated he was and arranged to meet appellant at a street location. At the meeting, appellant approached the officers and was given $50. Five minutes later, appellant returned to the undercover officers telling them to "check this out" (the cocaine). The officers asked appellant if he had any more and appellant said he did. The other undercover officer gave appellant $50 and appellant obtained cocaine for this officer. Lab tests performed on the "rocks" indicated the substance to be cocaine in a usable quantity.

Appellant testified at trial. He denied the transactions took place as described. Although he admitted he met with the undercover officers, he claimed that a Carl Fox told him the officers were Fox's brothers and were looking for drugs. He stated he helped Fox get the cocaine by going

with Fox into a black neighborhood. He explained that Fox was white and feared for his life and wanted to be accompanied by appellant. Appellant stated he was "paid with drugs from Carl Fox" for his efforts. Appellant also admitted four prior felony convictions while testifying. The jury returned verdicts of guilt and the trial court later found appellant was on parole when he committed these offenses. Appellant timely appealed. We have jurisdiction pursuant to A.R.S. §§ 13–4031 and –4033.

## DID THE COURT ERR BY PERMITTING THE PROSECUTOR TO PEREMPTORILY STRIKE TWO BLACK PERSONS ON THE JURY PANEL?

■ The record demonstrates that the appellant is black. The prosecutor exercised two of his peremptory challenges to strike two of the three black persons on the jury panel. Defense counsel objected to the strikes and the following colloquy took place:

THE COURT: ... Counsel, you have an objection to some of the strikes made by the state.

MS. WISDOM: Well, my understanding of the law, Your Honor, is that the prosecutor needs to show that he did not systematically use his strikes to remove black members of the jury for the reason that they are black.

THE COURT: Okay. You have me at kind of a disadvantage. I think that Mrs. Randolph and Ms. Dorsey—

MS. WISDOM: No, sir, Ms. Lovett.

MR. McMURDIE: That's correct.

THE COURT: Okay, counsel, could you explain your strikes of the two jurors in question?

MR. McMURDIE: Certainly, Your Honor.

Concerning Ms. Lovett, it was my impression watching her during the voir dire process—First of all, I question her extreme age, young age, being nineteen, also she seemed distracted during the proceedings, kept looking down and away. And also, given her responses, it was my impression that she wasn't a particularly bright juror. Those are my reasons for striking her.

. . . .

Concerning Ms. Randolph, I had some problems with her age, not on the young side, but on the other side, being somewhat elderly, seventy-three. And also she seemed distracted, and for the same reason, she didn't seem like a particularly bright juror. Those are my reasons.

The trial court made comments tending to substantiate the reasons articulated by the prosecutor.

Appellant contends he established a *prima facie* case under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and therefore the burden shifted to the prosecutor to articulate neutral explanations for its peremptory strikes and that the explanations given were insufficient. He asserts the only logical conclusion is that the prosecutor struck the black jurors on account of their race. Appellant points to the prosecutor's statement that each of the two jurors didn't seem "particularly bright" as indications of a racial motive.

The state argues appellant failed to establish a *prima facie* showing in the trial court. As the state correctly points out, the mere fact that a prosecutor exercised peremptory challenges against veniremen of a defendant's race does not necessarily establish a *prima facie* case. *State v. Holder*, 155 Ariz. 83, 745 P.2d 141 (1987). The supplemented record shows that the state peremptorily struck only two of the three black jurors on the panel. As our supreme court stated in *Holder*:

The court of appeals noted that the defendant here is black and that he claims that two members of his race were stricken from the jury by the state. From this alone, the court concluded that a *prima facie* case of prosecutorial discrimination had been established. Under *Batson*, the totality of the circumstances of the particular case must be examined to determine whether an inference of misconduct by the state has been established. In some instances, striking two members of a defendant's race, particularly if they are the only two, may be

enough to support a finding of *prima facie* discrimination. *However, we do not read Batson as requiring such a finding every time two members of a minority are stricken from a jury being selected to try a member of the same minority.* (Emphasis added.)

*Holder*, 155 Ariz. at 87, 745 P.2d at 145. The state notes that many courts have determined no *prima facie* showing is made when the government excuses some but not all of the veniremen of the same race as defendant. *See, e.g., United States v. Montgomery*, 819 F.2d 847, 851 (8th Cir. 1987); *United States v. Dennis*, 804 F.2d 1208 (11th Cir.1986) *cert. denied,* —— U.S. —— at ——, 107 S.Ct. 1973 at 1974, 95 L.Ed.2d 814. While we agree with these propositions, the trial court requested the prosecutor to explain his strikes and we therefore discuss the reasons articulated.

In *Batson v. Kentucky,* the Supreme Court stated:

Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried, (cites omitted) the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.

476 U.S. at 89, 106 S.Ct. at 1718–19, 90 L.Ed.2d at 82–3. The *Batson* court stated that a prosecutor's explanation need not rise to the level of justification to exercise a challenge for cause. But a prosecutor may not rebut a defendant's prima facie case merely by denying that he had a discriminatory motive. He must articulate reasons which satisfy a trial judge that his motive was not racial. *Batson,* 476 at 96–97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The difficulty courts face in this area is determining whether the reasons given by a prosecutor are true or valid, rather than fictitious reasons designed to mask discriminatory motives.

In this case, after the prosecutor stated his reasons, the trial court responded:

THE COURT: I tend to agree with you as to the second juror, Counsel, and that is, at age 73, although she does appear to be—she didn't appear to be senile in any way, nor do I mean to indicate that Ms. Randolph doesn't appear to be a bright and articulate lady, I did have the feeling that when we were going through voir dire that her age may have had an effect on her ability to perhaps pay close attention to what was happening.

However, I would disagree with you as to the other juror, mainly because of her young age. First of all, I don't think people should be struck simply because of their age. However, as you well know, many of these folks come in here, not just—not just people of her age—we're talking about Ms. Lovett now.

MR. McMURDIE: That's correct, Your Honor.

THE COURT: But they are nervous, and I would imagine that a 19 year-old coming into a courtroom for the first time in her life and having to sit before a judge would tend to be somewhat nervous and tend to appear to be not paying attention.

However, I don't feel—even though I don't agree with you as to her abilities as a juror, *I think that your reasoning for striking her as a juror is appropriate from your point of view, and therefore I will allow both strikes.* (Emphasis added.)

At the outset, we attach significance to the fact that although the prosecutor had six peremptory strikes, he did not strike all black persons from the jury. Secondly, we note that in both instances age was an articulated reason, and "[a]ge is a permissible factor to be considered in the exercise of peremptory challenges, particularly in the context of drug prosecutions." *State v. Castillo,* 156 Ariz. 323, 325, 751 P.2d 983, 985 (1987). The prosecutor also indicated one juror appeared "distracted during the proceedings, kept looking down and away." The trial judge also made this observation. Eye contact, when verifiable from the record, is a permissible, racially neutral factor. *State v. Tubbs,* 155 Ariz.

533, 747 P.2d 1232 (1987). The prosecutor's reasons, weighed and accepted by the trial court, are racially neutral. The court's determination is to be given great deference because it turns on an evaluation of credibility. *United States v. Woods,* 812 F.2d 1483, 1487 (4th Cir.1987); *United States v. David,* 803 F.2d 1567, 1571 (11th Cir.1986). Here, we cannot say the trial court erred.

## WAS IT ERROR FOR THE TRIAL COURT TO DENY APPELLANT'S MOTION FOR MISTRIAL FOLLOWING PRIOR BAD ACT TESTIMONY?

■ During the examination of one of the police officers, the following colloquy transpired:

> Q. Okay. And what was stated by the defendant to you at that time?
> A. The defendant at that time stated that he had a line on a stolen Lincoln, I believe it was, and that—

Defense counsel objected to this answer and made a motion for mistrial, which was denied. Appellant argues it was reversible error for the court to deny appellant's motion for mistrial. He contends that he was charged with two counts of sale of a narcotic drug and therefore evidence concerning prior stolen vehicles or stolen property improperly created, in the minds of the jury, the impression that appellant was an evil person. The state contends the trial court did not abuse its discretion in denying the mistrial and that the remark did not prejudice appellant since the state's evidence of appellant's guilt was overwhelming.

The granting of a mistrial is a matter within the trial court's discretion, *State v. Ramirez,* 116 Ariz. 259, 569 P.2d 201 (1977), and its refusal to grant a motion for mistrial will be reversed only if the conduct urged as grounds for mistrial was palpably improper and clearly injurious. *State v. Scott,* 24 Ariz.App. 203, 537 P.2d 40 (1975). The trial court is given great deference on review because he or she is able to "sense the atmosphere of the trial, the manner in which the objectionable statement was made, and the possible effect it had on the jury and the trial." *State v. Koch,* 138 Ariz. 99, 101, 673 P.2d 297, 299 (1983).

In this case, it is clear the prosecutor did not intend for this prior bad act evidence to be mentioned by the officer during his direct examination. Appellant admitted during his testimony that he had four prior felony convictions, and the evidence of his guilt was overwhelming. Two undercover police officers testified that appellant sold narcotics to them. Appellant himself admitted participation in obtaining narcotics for sale. Under these circumstances, the trial court clearly did not abuse its discretion in denying the motion for mistrial. These circumstances allow a conclusion that the jurors were not improperly influenced by this remark. *See State v. Hallman,* 137 Ariz. 31, 668 P.2d 874 (1983).

## DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR A ONE–DAY CONTINUANCE?

■ At trial, appellant testified he was set up by a friend, Carl Fox, also apparently a confidential informant. The public defender's office moved to withdraw from appellant's representation on the basis that Mr. Fox was a material witness and was represented by the public defender. This motion was made almost four months prior to appellant's trial. Thus, defense counsel was clearly and timely aware that Carl Fox was a witness.

During the second day of appellant's trial, counsel requested a one-day continuance in order to attempt to have Carl Fox, also known as Carl Kindred, subpoenaed to appear at trial and testify. The motion to continue was denied. Although counsel made no offer of proof, she indicated to the court that Carl Fox was a "crucial witness" because he was present at the time the offenses were committed. Now, appellant contends it was reversible error for the court to deny the motion to continue.

A trial court's denial of a motion to continue for the purpose of securing the presence of a witness will not be disturbed absent an abuse of discretion and resulting prejudice. *State v. Amarillas,* 141 Ariz. 620, 688 P.2d 628 (1984); *State v. Foster,* 121 Ariz. 287, 589 P.2d 1319 (1978). In this matter, the court indicated it denied the motion based on the fact appellant had

ample opportunity to secure the attendance of this witness several months prior to trial, defense counsel was aware Carl Fox was potentially a material witness, and the court had done everything possible to secure Mr. Fox's attendance. Furthermore, the court stated there was no prejudice to appellant's case because even if Mr. Fox corroborated appellant's story, the outcome would be no different. (The jury was instructed on accomplice liability.)

Appellant argues that Mr. Fox would have provided testimony in support of his entrapment defense. Relying on the factors quoted with approval in *State v. Reynolds*, 123 Ariz. 117, 597 P.2d 1020 (1979), appellant contends that the trial court abused its discretion in denying his request for a one-day continuance. He asserts that Carl Fox's testimony could have confirmed appellant's story that he did not receive any money nor transfer any drugs but was only acting at the behest of Fox, and therefore, he was entrapped into committing the offense. Appellant's entrapment defense can be fairly described as "weak." In fact, there was virtually no evidence appellant was not predisposed to commit the crime. *See State v. Boccelli*, 105 Ariz. 495, 467 P.2d 740 (1970) (crucial element of entrapment defense is that intent to commit crime must not arise in mind of accused). Rather, appellant testified he could not understand how a long-time friend could "set him up." Being "set up" and entrapped are two distinct matters. Here, appellant testified he willingly accompanied Mr. Fox to obtain drugs for the officers. As such, the trial court's finding that Mr. Fox's testimony would not affect the outcome of the trial is clearly supported by the record. Therefore, it was not an abuse of discretion to deny the motion to continue.

For the foregoing reasons, the judgment of the trial court is affirmed.

FROEB, P.J., and GRANT, J., concur.