788 P.2d 1239
**STATE of Arizona, Appellee,**

v.

**Esteban REYES, Appellant.**

**No. 1 CA–CR 88–1216.**

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 26, 1989.
Review Denied April 17, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Criminal Div., and Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Paul C. Klapper, Deputy Public Defender, Phoenix, for appellant.

VOSS, Judge.

In this appeal, we consider whether the prosecutor's exercise of peremptory challenges to strike one Black and two Hispanic members from the jury panel was discriminatory in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution, or the right to an impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution.

Appellant, Esteban Reyes, was convicted by a jury of aggravated assault, and second degree murder. The charges were filed as a result of a fight in the parking lot of a bar, where appellant shot two people, killing one of them.

Appellant is Hispanic. During jury selection, the prosecutor used peremptory challenges to strike one Black and two Hispanic members from the jury panel. Appellant's counsel objected on the grounds that the peremptory strikes were racially motivated. The trial court overruled the objection.

Appellant raises two challenges to the prosecutor's peremptory strikes: 1) that the strikes violated the equal protection clause of the Fourteenth Amendment; and 2) that the strikes violated his right to an impartial jury under the Sixth and Fourteenth Amendments.

The state has no right to exclude any particular cognizable group from a jury panel for discriminatory reasons. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *State v. Superior Court (Gardner),* 157 Ariz. 541, 760 P.2d 541 (1988), *petition for cert. filed sub nom. Arizona v. Nastro* (U.S. Dec. 17, 1988) (No. 88–1037). A trial court must carefully evaluate peremptory challenges, because "[such] challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to dis-

**490**

criminate.'" *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723 (quoting *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244, 1247–48 (1953)).

▌ Under an equal protection analysis, a defendant may contest peremptory strikes against the members of his racial group. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722; *State v. Bailey,* 160 Ariz. 277, 281, 772 P.2d 1130, 1134 (1989). In this case, the state struck two persons with Hispanic surnames from the jury panel. Hispanics are a cognizable racial group for equal protection purposes. *Castaneda v. Partida,* 430 U.S. 482, 495, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498, 511 (1977); *State v. Acosta,* 125 Ariz. 146, 150, 608 P.2d 83, 87 (App. 1980).

▌ The state's use of peremptory challenges to strike two Hispanics and the Black member from the jury panel was a potential violation of appellant's right under the Sixth and Fourteenth Amendments to an impartial jury drawn from a cross section of the community. Our supreme court has held that excluding a member of a cognizable group in a discriminatory manner, whether or not the defendant is a member of that cognizable group, violates that defendant's right to a jury taken from a fair cross section of the community. "Any discriminatory exclusion from either the jury panel or the trial jury directly impairs the constitutional right to the opportunity to obtain a jury drawn from a fair cross-section of the community." *Gardner,* 157 Ariz. at 545, 760 P.2d at 545.

▌ The state, therefore, may not use peremptory challenges to discriminate against any cognizable group, whether or not the defendant is a member of that group. Objections to such challenges present two difficult factual issues: first, determining when the defendant has made a *prima facie* showing that a peremptory strike of any member of a cognizable group is made for discriminatory reasons, and, second, once a *prima facie* showing is made, determining whether the prosecutor's stated reasons for the strike are sufficiently neutral to rebut the allegation of discrimination. *Batson,* 476 U.S. at 94–98,

106 S.Ct. at 1722–23, 90 L.Ed.2d at 86–89. Because the trial court apparently found that appellant made a *prima facie* showing of discrimination by requesting the prosecutor to state reasons for his strikes, we only consider the latter. *See State v. Jackson,* 157 Ariz. 589, 592, 760 P.2d 589, 592 (App.1988).

▌ To ensure that no discriminatory intent underlies a facially neutral explanation, a prosecutor is required to state objectively verifiable reasons for a challenged peremptory strike. *State v. Tubbs,* 155 Ariz. 533, 537, 747 P.2d 1232, 1236 (App. 1987).

In framing his *Batson* objection, defense counsel inquired of the state as to its "reasons for striking [the] specific jurors." In response, there was initial discussion of what minorities remained after the state's peremptory challenges. Our reference to this discussion is necessitated by the dissent's conclusion that "[t]he prosecutor ... struck all members of racial minorities from the panel." While conceding that there was a discussion between the court and counsel, on what minorities remained, the dissent puts some weight on the fact that there was no "finding" that minorities remained. We do not believe that a finding as to remaining minorities is necessary in the instant case, as the *prima facie* showing is conceded. *See Bailey,* 160 Ariz. at 281, 772 P.2d at 1134 (racial make-up of final jury panel important consideration in establishing defendant's *prima facie* showing). In any event, the record supports a conclusion, albeit irrelevant, that minorites remained.

▌ The discussion then moved to the reasons for striking the specific jurors. The prosecutor justified his strike of the Black member of the panel because of his and his family's significant criminal involvement, some of which was not readily disclosed in voir dire. The trial court likewise expressed concern about this panel member's holding back answers. The prosecutor explained striking the Hispanic woman because she appeared "overwhelmed" and "might have trouble following the proceedings," an impression shared by the trial court. The prosecutor also

stated that the Hispanic woman appeared to be a "sympathetic type person," and she was pregnant, and therefore, the prosecutor believed, she would have "difficulty finding someone guilty of homicide."

The trial court's concurrence and acceptance of the prosecutor's racially neutral explanations regarding the first two strikes clearly comply with *Batson. Bailey,* 160 Ariz. at 281, 772 P.2d at 1134. We need not address whether the prosecutor's second proferred basis concerning the Hispanic female was sufficiently race neutral. *See Tubbs,* 155 Ariz. at 537, 747 P.2d at 1236 ("While it is true that an elusive, intangible explanation for exclusion might not qualify as racially neutral, such is not the case when the explanation is coupled with an objectively verifiable reason.").

The third strike involved an Hispanic male. In explaining the basis for this strike the prosecutor first stated that this panel member "has a sister who is spending time in prison for assault; one of the charges against the defendant." The prosecutor later reasserted this factor as his primary reason for the strike. The prosecutor separately added that because of the panel member's age and appearance (ie: his poor dress), he might be of an economic background such that he would relate sympathetically to the defendant's involvement in a working-class barroom fight.

The trial court did not question the first basis given by the prosecutor for striking the Hispanic male. However, the trial court asked the prosecutor to explain in greater detail his second proferred basis. The prosecutor repeated his impressions and further noted this panel member's job as a grocery clerk. He commented that whereas his explanation might sound like economic discrimination, his real concern was with this panel member's propensity to sympathize with the defendant.

As discussed both above and by the dissent, the trial court correctly found that the first two strikes were without discriminatory intent. In discussing those strikes the trial court twice articulated the test it was applying to the matter before it:

> [T]he answers that concerned this Court as to his ability to sit as a fair and impartial juror did not raise questions of race, or minority, or economic status, or any of the Batson categories.
>
> ... I certainly did not feel that those reactions had anything to do with race, or minority, or economic status, or any of the other Batson categories.—categories that Batson wished to address.

The trial court then moved to the third strike and stated:

> Based upon all of [the Hispanic panel member's] answers, and all of the argument of both counsel, and as to whether or not there's a pattern that's developed here, I cannot find grounds upon which to say that there has been such a pattern as what the Batson case was addressing.

The dissent places great weight on the trial court's use of the term "pattern" in concluding that the trial court articulated and applied the wrong test regarding the third strike. It certainly is correct that a if the trial court only examined whether there was a "pattern of discrimination," then that would be insufficient under *Batson.* However, a fair and reasonable review of the record demonstrates that the trial court applied the correct test to all three challenges, and found that the prosecutor's strikes were not used for discriminatory purposes.

Nothing in the record, except reading the term "pattern" in a limited context, would indicate that the trial court misapplied *Batson.* The trial court reviewed the first two strikes individually, utilizing the *Batson* criteria without regard to the other challenged strikes, or other factors which might denote consideration of a "pattern." Directly thereafter, the trial court considered the third strike. It is resonable to assume that the trial court continued to apply the same correct test to the third strike as it did the preceeding strikes.

The exact meaning of the trial court's use of the term "pattern" is unclear. One consistent interpretation is that the trial court addressed each strike individually, as he was specifically asked to do by defense counsel, and finding no discriminatory intent, proceeded to view all three strikes as a whole to consider whether overall the

prosecutor's conduct indicated a discriminatory intent.

The understanding and purpose of the trial judge is manifest in the following:

THE COURT: I consider Batson issues to be extremely serious. Again, from the theme that everyone is aware of, I intended to help Mr. Reyes, as well as the State of Arizona, to have a fair trial. Both sides are entitled to that. To do that, you need an impartial jury. All trials are important, certainly all criminal ones. And this one certainly has its features that make it an exceptionally important matter.

We will give great deference to a trial court's finding that a prosecutor's reason for a peremptory strike was nondiscriminatory because such a finding "turns on an evaluation of credibility." *Jackson*, 157 Ariz. at 593, 760 P.2d at 593; *see also State v. Castillo*, 156 Ariz. 323, 326, 751 P.2d 983, 986 (App.1987). The prosecutor gave facially neutral, nondiscriminatory reasons for his strikes in this case, and the trial court upheld these strikes. We see no compelling reason to question the trial court's determination in this case, and we, therefore, find no error.

For the foregoing reasons, we affirm the conviction and sentence.

JACOBSON, J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I dissent because I am unwilling, on this record, to accord the deference the majority does to the trial judge's finding that the state's use of one of its peremptory challenges was proper. It appears to me that, in considering the challenge to the Hispanic male member of the panel, the trial judge may have been influenced by an extraneous factor—the absence of a pattern of discrimination by the state in the exercise of peremptory challenges.

The principle established in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), is so important, and so difficult to implement, that it behooves us to resolve the doubts this record raises in favor of the defendant. In so saying, I do not imply that this trial judge took a cavalier approach to the defendant's objection to the peremptory challenges. Indeed, I am satisfied that he made a conscientious effort to implement *Batson* but simply applied a wrong standard in reaching his decision.

I agree with the majority that the record supports the judge's ruling concerning two other members of the panel, the Black male and the Hispanic woman. With regard to the latter, I question whether it would have been proper to allow the challenge if the prosecutor's assessment that she was a "sympathetic type person" was all that supported it. The judge specifically agreed, however, with the prosecutor's belief that this panel member might have a difficult time following the proceedings. That was enough to support a peremptory challenge.

With respect to the Hispanic male, one of the reasons the prosecutor gave for striking him from the panel was that he was of a lower economic class. I have a doubt as to whether membership in a particular socio-economic class is a legitimate reason for the exercise of a peremptory challenge. In *State v. Gardner*, 157 Ariz. 541, 760 P.2d 541, *petition for cert. filed sub nom. Arizona v. Nastro*, 57 U.S.L.W. 3456 (U.S. Dec. 17, 1988) (No. 88–1037), our supreme court, predicating its holding on an interpretation of the sixth amendment guarantee to an impartial jury, broadly forbade the use of a peremptory challenge to exclude any substantial and *identifiable class of citizens* from the jury for discriminatory reasons. *Id.* at 546, 760 P.2d at 546 (emphasis added); *but see Sands v. Cunningham*, 617 F.Supp. 1551 (D.C.N.H.1985).

In any event, it cannot be denied that the fact that this panel member had a sister in prison for assault would have been an acceptable reason to strike him. That does not end the inquiry, however, because the judge did not indicate that this was the reason he was overruling the defendant's objection, and more importantly, the judge apparently misunderstood how *Batson* objections should be weighed. He said:

Based upon all of Mr. Garcia's answers, and all of the arguments of both counsel, and as to whether or not there's a pattern that's developed here, I cannot find grounds upon which to say that there

has been such a pattern as what the *Batson* case was addressing.

There are two problems with the judge's explanation. First, it is unsupported by the record. The prosecutor, from all we can tell and for whatever reason, struck all members of racial minorities from the panel. It is true that he mentioned that two remaining members of the panel might be Hispanic, but this was never pursued and there was no finding to that effect.

Second, and more important, no pattern of impermissible strikes is necessary to a finding that a particular strike is improper. Indeed, there will be many cases in which no pattern can be discerned because there will only be one member of a racial minority group on the panel. The judge might have meant that since he saw no pattern of discrimination, he believed the prosecutor's explanation for why he struck the Hispanic male. It is not clear, however, that this is what the judge did mean.

*Batson* must not become a dead letter. There is no room for confusion when a court weighs the reasons the state gives for exercising strikes against cognizable groups. I would reverse and remand for a new trial.