NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

COREY DEAN TARPLEY, *Appellant*.

No. 1 CA-CR 15-0811
FILED 11-29-2016

---

Appeal from the Superior Court in Maricopa County
No. CR 2014-127321-001
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Maricopa County Office of the Legal Advocate, Phoenix
By Consuelo M. Ohanesian
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

**D O W N I E**, Judge:

**¶1**    Corey Dean Tarpley appeals his conviction and sentence for sale or transportation of narcotic drugs. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**    Acting on information that a person was selling crack cocaine in the parking lot of a hotel, two undercover police detectives made contact with Tarpley. One detective followed Tarpley to a hotel room, where he purchased crack cocaine for $50. Approximately three weeks later, the detectives again contacted Tarpley in the same hotel parking lot. On that date, they purchased a gun from Tarpley.[1]

**¶3**    Tarpley was indicted on one count of sale or transportation of narcotic drugs, a class 2 felony, and one count of misconduct involving weapons, a class 4 felony. The superior court severed the counts for trial and later dismissed the misconduct involving weapons charge by stipulation of the parties.

**¶4**    The jury found Tarpley guilty of sale or transportation of narcotic drugs and found that he committed the offense for pecuniary gain. The court determined Tarpley had two historical prior felony convictions and sentenced him to a mitigated term of 10.5 years' imprisonment. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-703(C), (J).

**¶5**    Tarpley timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A).

---

[1]    The superior court precluded evidence at trial that the item purchased was a gun.

**DISCUSSION**

I.    *Batson*[2] **Challenge**

¶6          Tarpley first challenges the denial of his *Batson* challenge to the State's use of a peremptory strike to remove an African-American man from the jury panel. We will affirm the superior court's ruling unless it was clearly erroneous, as a *Batson* determination is based "largely upon an assessment of the prosecutor's credibility." *State v. Garcia*, 224 Ariz. 1, 10, ¶ 22 (2010). A three-step analysis applies to *Batson* challenges:

> First, the defendant must make a prima facie showing that the strike was racially discriminatory. If such a showing is made, the burden then switches to the prosecutor to give a race-neutral explanation for the strike. Finally, if the prosecution offers a facially neutral basis for the strike, the trial court must determine whether "the defendant has established purposeful discrimination."

*State v. Newell*, 212 Ariz. 389, 401, ¶ 53 (2006) (quoting *Batson v. Kentucky*, 476 U.S. 79, 98 (1986).

¶7          The following exchange occurred between the court and the prospective juror ("Juror 1") after the court asked whether any panel member or their close relatives or friends had been arrested, charged, or convicted of any crime other than a minor traffic offense:

> THE COURT: . . .  Juror number one, was it you or a family member or friend who got -- had some charges?
>
> JUROR:  It was a friend.
>
> . . .
>
> THE COURT:  Okay.  And what were . . . the charges against the friend or the arrest?  What was he arrested for?
>
> JUROR:  She.  She was arrested for transportation of drugs. She was falsely accused of.  She got out of, got out of it.
>
> THE COURT:  Okay.  So she, your friend, was charged with transporting drugs or selling drugs?

---

2       *Batson v. Kentucky*, 476 U.S. 79 (1986).

JUROR:  Yes, yes.

THE COURT:  And she was ultimately -- were the charges dismissed, or what happened?

JUROR:  Yes, they were dismissed.

THE COURT:  The charges were dismissed.  Okay.  And you -- I have you down as someone who believes that . . . you as a juror in this case, would impact your deliberations.

Do you feel like she was treated badly?

JUROR:  Yes, I do.

THE COURT:  Okay.  And, sir, there's certainly nothing wrong with that.

Let me ask you this: Is that something that you might hold against the State in this case or the other party for any reason?

JUROR:  It's hard to say.

THE COURT:  Hard to say.  Can you tell me -- can you confidently tell me that you could put aside your friend's experience or your relationship with your friend, and that you could put those things aside and decide this case based solely on the evidence presented here in the courtroom and the law as given to you by the court?

JUROR:  I can try.

THE COURT:  Okay.  And that's . . . fair.  But you say you'd try.  So sounds like you're not confident; is that fair?

JUROR:  Yes, sir.

THE COURT:  And I don't --

JUROR:  -- put my differences aside --

THE COURT:  I'm sorry.  I didn't hear that.

Before I hear from you again, sir, I, I don't mean to pick on you. And I appreciate you're trying to be candid with me here. And remember, there's no right or wrong answer.

So what was it you were trying to tell me?

JUROR: I could put my, try to put my differences aside for this case.

THE COURT: Okay. Are you confident you could do that?

JUROR: Yes.

THE COURT: Okay. Thank you, sir.

The State moved to strike Juror 1 for cause. Tarpley objected, arguing the juror had been rehabilitated. The court denied the State's motion.

¶8　　　　The State thereafter used a peremptory strike as to Juror 1, and Tarpley raised a *Batson* challenge. The court found that Tarpley had made a prima facie showing of discrimination and asked the State to respond. The prosecutor voiced concern about Juror 1's ability to be fair and impartial. He argued Juror 1 initially indicated he would hold his friend's experience "against the State," then "hemmed and hawed for some time" before ultimately agreeing he could be fair and impartial. The State also expressed concern that Juror 1 had not responded to any other questions posed by the court, which the prosecutor avowed was "another reason that I use often to strike people." The court denied the *Batson* challenge, finding the State had articulated a race-neutral explanation and that, although Juror 1 was ultimately rehabilitated, it was not without "a lot of hesitation on his part." The court observed that "[k]eeping him on the jury was not a slam dunk in terms of the rehabilitation."

¶9　　　　The superior court did not err. Juror 1 expressed uncertainty when asked whether he would hold his friend's experience against the State and again when asked if he could judge the case based solely on the evidence presented and the law as instructed by the court. He also corrected himself when stating, "I could put my, *try* to put my differences aside for this case." (Emphasis added.) The court asked if he was confident he could "do that," to which the juror responded, "Yes." Read in context, it is unclear whether the juror simply meant he was confident he could *try* to put his differences aside.

¶10 Tarpley concedes that "[o]n their face, without further analysis, the State's reasons for striking [the juror] appear to be race-neutral," but nevertheless draws comparisons between Juror 1 and others on the panel who were not stricken when the State exercised its peremptory strikes. *Batson*, though, does not require "a comparison between the jurors who are excused from a panel and all of the other prospective jurors remaining on the panel." *State v. Castillo*, 156 Ariz. 323, 325 (App. 1987). Moreover, the court noted that the difference between jurors who were not stricken and Juror 1 was "Juror number 1 was on the fence. And there was significant hesitation on his part." The court also observed that, "if I were an attorney, I would be concerned about that."

¶11 Under the circumstances presented, the superior court did not err by denying Tarpley's *Batson* challenge.

## II. Prior Convictions

¶12 Tarpley also contends the State failed to "follow the proper procedure for establishing a prior conviction." We review a trial court's determination that a prior conviction constitutes a historical prior felony conviction *de novo* as a mixed question of fact and law. *State v. Derello*, 199 Ariz. 435, 437, ¶ 8 (App. 2001).

¶13 According to Tarpley, "[t]he proper procedure for establishing a prior conviction is for the state to submit a certified copy of the conviction and establish that the defendant is the person to whom the document refers." But that in fact occurred here.

¶14 Officer Dodd testified that he took Tarpley's fingerprints, which were introduced as Exhibit 1. Officer Dodd then requested a comparison of those fingerprints to Tarpley's criminal records. Hillary Sellmeyer conducted the comparison. Sellmeyer testified she compared the Exhibit 1 prints to "the ten-print record and the priors document" from Exhibit 2 (the "penitentiary package" or "pen pack"), and they matched. The certified documents in Exhibit 2 included Tarpley's fingerprints, full name, and date of birth.

¶15 Based on the evidence presented, the superior court properly found the existence of two prior felony convictions. *See State v. Solis*, 236 Ariz. 242, 248, ¶ 21 (App. 2014) ("[P]en packs alone may be sufficient to prove prior convictions.").

**CONCLUSION**

¶16        We affirm Tarpley's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:   AA