747 P.2d 1232

**STATE of Arizona, Appellee,**

v.

**Arlie Gene TUBBS, Appellant.**

**1 CA–CR 10681.**

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 22, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Crane McClennen, Asst. Atty. Gen., Phoenix, for appellee.

Dean Trebesch, Public Defender by John W. Rood III, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GRANT, Judge.

Defendant was charged with Count I, sexual assault; Count II, burglary; Count III, burglary; and Count IV, criminal trespass. A jury found defendant guilty of all charges except Count I (sexual assault).

The court denied a subsequent motion for a new trial for Counts II and IV but

granted a new trial for Count III. Defendant then entered an *Alford* guilty plea to Count III in exchange for the state's agreement to: dismiss all but one prior conviction on Counts II and IV; allege only one prior conviction as to Count III; and run all sentences concurrently. The trial court sentenced defendant to concurrent terms of five years on Count II and Count III and three years on Count IV. The defendant was given credit for 259 days presentence incarceration.

On appeal, defendant argues that: (1) the court erred when it failed to grant his motion for judgment of acquittal on Count II or for a new trial; (2) the trial court erred when it denied his motion for a mistrial following the jury selection; and (3) his *Alford* plea to Count III was not voluntary or intelligently made.

The facts necessary to sustain the conviction and sentence follow. In the evening of January 29, 1986, after locking her doors, the victim spent the evening watching television with her three children. At the time she locked the kitchen door, the curtains were straight and the window screen intact. The victim and her children fell asleep. She awoke around midnight, heard a noise, and discovered defendant in her living room. The victim recognized him as a previous social guest in her home, one who had dated a girl friend of the victim. After some conversation, defendant told the victim to go into another room, and once there, told her to undress. The victim testified she was forced by defendant to have sexual intercourse and perform fellatio. After the victim heard the defendant leave, she got up, took her children into the kitchen and locked the door. It was at this point, she noticed that the curtains were falling off and the window screen was torn. The victim telephoned the police from a neighbor's and after the police arrived the victim went to the hospital and then she and her children went to her mother's house.

Later that morning, a neighbor called the police after seeing someone trying to get into the victim's house. The police arrived, saw someone in the house and noticed that one of the windows in the house was broken and open. Defendant came out of the victim's home only after being warned that if he didn't come out, the police would send in a police dog.

## SUFFICIENCY OF EVIDENCE TO SUPPORT CONVICTION ON COUNT II, BURGLARY

At the close of the state's case, the defendant made a rule 20 motion for judgment of acquittal, which was denied. After the verdict of guilty, defendant renewed his motion and joined it with a rule 24.1 motion for new trial. The trial court must grant a rule 20 motion only if there is no substantial evidence to warrant a conviction. Rule 20, Arizona Rules of Criminal Procedure. In passing on a motion for judgment of acquittal the trial judge gives "full credence to the right of the jury to determine credibility, weigh the evidence and draw justifiable conclusions therefrom...." *State v. Clifton*, 134 Ariz. 345, 348, 656 P.2d 634, 637 (App.1982). However, when the court considers a motion for a new trial, its power is significantly expanded. This decision may very well be the last one made by the trial judge before the defendant loses his freedom. *Id.* Unlike a motion for a directed verdict, a motion for a new trial is discretionary and as such, in considering the motion for new trial, the trial court may weigh the evidence and consider the credibility of witnesses. *Id.* Because a motion for a new trial based on the claim that the verdict is contrary to the weight of the evidence involves weighing evidence and determining the credibility of witnesses, the trial court's ruling on such a motion will not be reversed on appeal absent an abuse of discretion. *State v. Neal*, 143 Ariz. 93, 97, 692 P.2d 272, 276 (1984).

In the present case, the jurors concluded that defendant was guilty of burglary twice: once when he first entered the victim's house and allegedly assaulted her; and a second time when he was discovered in the victim's home later that morning.

Defendant, however, argues that the only evidence the state presented on his

intent to commit a felony, a necessary element of the first burglary conviction, was his sexual assault on the victim. Because the jury found defendant had not sexually assaulted the victim, he argues that no evidence existed to establish his felonious intent in entering and remaining in the house.

Defendant is incorrect. The mere fact that the jury found he did not commit the sexual assault does not mean that the jury was precluded from finding that he had the intent to engage in a sexual assault or some other felony while in the house. The indictment charged defendant with "the intent to commit a theft or a felony therein"; it did not limit the felony to a sexual assault.

The Arizona Supreme Court has held that the jurors may consider the circumstances surrounding the entry itself in determining the defendant's intent upon entry:

> The law in Arizona is that while the requisite intent may not be inferred from mere entry or theft alone, any additional factor may be sufficient to warrant such an inference. Here, if the jury believed (the witness's) testimony, it could have found that the appellant had the specific intent necessary to commit burglary in the third degree from the fact that he broke the window.

*State v. Malloy*, 131 Ariz. 125, 130, 639 P.2d 315, 320 (1981) (citations omitted); *see also State v. Rodriguez*, 114 Ariz. 331, 333–34, 560 P.2d 1238, 1240–41 (1977) (jurors could infer intent from forced entry and unsatisfactory explanation for entry); and *State v. Taylor*, 25 Ariz.App. 497, 499, 544 P.2d 714, 716 (1976) (jurors could infer intent from unauthorized entry into premises gained by force); *accord, State v. Talley*, 112 Ariz. 268, 270, 540 P.2d 1249, 1251 (1975) (jurors could infer intent from late hour, unauthorized entry, unexplained activity and presence in the residence, and attempt to hide); *State v. Hopkins*, 108 Ariz. 210, 211, 495 P.2d 440, 441 (1972) (jurors could infer intent from entry through a window).

In the present case, the victim testified the defendant entered her home sometime after midnight, that she was asleep and did not give him permission to enter, and that he entered by ripping off the screen and coming through a window. The jury was instructed that a person commits burglary in the second degree by entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or any felony therein. From this instruction, we believe the jury could have found that the defendant entered the victim's home intending to commit a felony other than sexual assault. As the above-cited authority indicates, the jurors could infer that defendant had the intent to commit a felony when he entered the victim's home. The trial court therefore did not abuse its discretion when it denied defendant's motion for a new trial.

## INVOLUNTARINESS OF PLEA TO BURGLARY IN COUNT III

■ Defendant contends that his *Alford* plea of guilty to the second burglary charge (Count III) is invalid because no factual basis existed since he lacked the specific intent necessary for burglary. As noted above, the fact finder may infer intent from the circumstances of the entry or presence in the building. In providing the factual basis for the plea, the prosecutor stated that the evidence would show that a neighbor saw the defendant raising a window to the house; that the police found the front door had been kicked in; that defendant hid from the police; that defendant came out only after the police told him that they would send in a police dog to get him; that defendant explained that he had gone into the house to use the bathroom, but that the bathroom had not been used; and that the victim did not give defendant permission to use her house. These facts are sufficient to provide a factual basis for the element of entry with the intent to commit a felony, and support the validity of the defendant's *Alford* plea to Count III.

## JUROR SELECTION

■ Defendant contends that the prosecutor exercised his peremptory challenges

in a discriminatory manner and that the trial court erred when it denied his motion for mistrial. In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court stated the following:

> Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.

*Id.* at 89, 106 S.Ct. at 1718–19, 90 L.Ed.2d at 82–83 (citations omitted).

> Once the defendant makes a prima facie showing, the burden shifts to the state to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of the challenge for cause.... The prosecutor therefore must articulate a neutral explanation related to the particular case being tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Id.* at 97–98, 106 S.Ct. at 1723, 90 L.Ed.2d at 88–89 (footnotes and citations omitted). The prosecutor therefore may exercise his peremptory challenges for any reason as long as the reason is not discriminatory.

■ Courts have had a difficult time determining whether the reasons given by the prosecutor are the true reasons or fictitious reasons given for the purpose of masking discrimination. In *Slappy v. State,* 503 S.2d 350 (Fla.Dist.Ct.App.1987), the Florida court stated that the following reasons weigh heavily against the legitimacy of any race neutral explanation: (1) an explanation based on a group bias where the group trait is not shown to apply to the challenged jurors specifically; (2) no examination or only a perfunctory examination of the challenged juror; (3) disparate examination of the challenged juror, *i.e.,* questioning the challenged venireman so as to evoke a certain response without asking the same question of other panel members; (4) the reason given for the challenge is unrelated to the facts of the case; and (5) disparate treatment where there is no difference between responses given to the same question by challenged and unchallenged veniremen. *Id.* at 355.

In this case, the prosecutor stated that he struck the only black member on the panel because he did not like the potential juror's eye contact and because he thought that the juror and defendant both worked for the City of Phoenix Sanitation Department. The prosecutor further stated that he struck a white juror for the same reason, *i.e.,* that he did not like that juror's eye contact.

Using the five-part test set forth in *Slappy,* we note that: (1) the reasons given (concern about eye contact and indication that prospective juror and defendant worked for same employer at one time) were not based on a group bias; (2) and (3) the prosecutor did not single out the venireman for questioning, and in fact did not question any of the potential jurors; (4) the reasons given related to the facts of the case or the person in question; and (5) there was no disparate treatment in that the prosecutor struck a white juror for the same reason, *i.e.,* lack of eye contact.

Defendant argues, however, that the prosecutor's explanation was not racially neutral. We disagree

While it is true that an elusive, intangible explanation for exclusion might not qualify as racially neutral, such is not the case when the explanation is coupled with an objectively verifiable reason. We are not asked to decide whether lack of eye contact alone is sufficient for a prosecutor to exclude the only black juror on the panel.

The lack of eye contact coupled with the possibility that, at one time, defendant and the juror worked for the same employer is racially neutral and sufficient to support exclusion. *See State v. Holder,* 155 Ariz. 83, 745 P.2d 141 (1987).

If defendant is claiming the prosecutor was not being truthful in his responses, we note that the United States Supreme Court has stated that, since the findings of the trial judge largely will turn on an evaluation of credibility, appellate courts should give these findings "great deference." *Batson v. Kentucky,* 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21. The trial court is in a position to observe matters that cannot be captured in a written appellate record. Defendant gives no reason for this court to assume it is a better judge of credibility than was the trial judge. He has therefore failed to carry his burden to show the trial court abused its discretion in denying the motion for a mistrial.

For the foregoing reasons we affirm the conviction and sentence.

SHELLEY, P.J., concurs.

KLEINSCHMIDT, Judge, concurring:

I concur in the result. I think that the prosecutor articulated a racially neutral reason for exercising his peremptory challenge when he stated that there was reason to believe that both the juror and the defendant might have been city sanitation workers, a possible common link that might cause the potential juror to sympathize with the defendant. This alone will support the peremptory challenge.

The prosecutor's other reason for striking the potential juror, lack of eye contact, raises a different question. I am not concerned with whether poor eye contact is a sufficient reason to exercise a challenge. At least one case suggests that it is. *Townsend v. State,* 730 S.W.2d 24 (Tex. App.1987). I would, however, insist that whenever there may be a racial motive for a peremptory challenge the trial judge must be able to actually observe the conduct or verify the existence of the circumstances which are given as the racially neutral reason for exercising the challenge. In other words, if poor eye contact is the reason for using a strike, the judge must have observed that eye contact was in fact poor. Matters not susceptible of observation by the judge ought not be justification for a peremptory challenge. This will require keen attention by the trial judge, but racial discrimination in the courts is so demoralizing, the *Batson* policy is so strong, and the implementation of the policy is so easy to evade that I believe we should require no less.

Since the one reason the prosecutor gave was sufficient and verifiable, there is no need to send the case back to the trial court for a determination of whether the trial judge observed the lack of eye contact. I concur in all respects with the majority on the other issues in the case.