823 P.2d 1309

**STATE of Arizona, Appellee,**

v.

**Antonio G. HERNANDEZ, Appellant.**

**No. 1 CA–CR 90–1009.**

Court of Appeals of Arizona,
Division 1, Department C.

Aug. 22, 1991.

Review Denied Feb. 19, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Edward F. McGee, Deputy Public Defender, Phoenix, for appellant.

## OPINION

EHRLICH, Presiding Judge.

Antonio G. Hernandez, the defendant, was convicted by a jury of first degree murder and sentenced to life imprisonment without possibility of release until he serves twenty-five years. The defendant timely appealed his conviction and sentence. We affirm the judgment.

## FACTS

On the night of June 30, 1987, the defendant was drinking at the Roadhouse Bar in El Mirage with Ricky Alcantar, Daniel Moreno Carrizosa and Hector Mendoza.[1] Jewl Briggs also was there. Alcantar told the defendant and the others that Briggs was a "narc," a narcotics law enforcement agent. When Briggs left the bar, Carrizosa, Mendoza and the defendant, who was carrying a black Luger Tec–9 nine millimeter machine pistol, followed him. The defendant and Briggs argued and then, approximately 100 yards from the bar, the defendant shot Briggs several times. Briggs was begging the defendant not to shoot and the defendant was ready to leave when Carrizosa asked for the gun to kill Briggs so that Briggs would not be able to identify his assailants. Instead, the defendant killed Briggs.

At trial, Michael Villareal testified that he was at the Roadhouse Bar that evening and saw the defendant, Carrizosa and Mendoza there. Villareal also noticed a gun in the waistband of the defendant's pants. Someone told Villareal that others were going to beat up Briggs and so Villareal asked the bartender to have Briggs leave before something happened. Villareal then saw the bartender speak to Briggs and Briggs leave. Shortly thereafter, the defendant, Carrizosa and Mendoza followed

Briggs outside. Villareal went to the door and observed Briggs and the men arguing. He then saw gunfire and Briggs fall.

Mendoza testified that he saw the defendant put a gun in his pants and heard Alcantar tell the defendant in the bar that Briggs was a "narc." Mendoza saw the defendant and Carrizosa leave the bar and he left immediately after them. Outside, he heard the defendant and Briggs exchange words, and saw the defendant shove and then shoot Briggs. When the defendant said "Let's go," Carrizosa responded, in Spanish, "No, kill him so he won't talk" and asked for the gun.[2] The defendant instead kept it, saying "I already shot him three times; I'll do it" and fired again, killing Briggs. The three men then left the scene.

Later that night, the defendant unexpectedly visited an acquaintance, Ralph Chayrez. As Chayrez subsequently drove the defendant by the Roadhouse Bar at the defendant's request, Chayrez noticed that the defendant carried a black Tec–9 machine pistol.

At trial, the defendant argued that either Carrizosa or Mendoza had shot Briggs, and that Villareal and Mendoza were lying.

On appeal, the defendant raises the following issues:

(1) whether the trial court committed reversible error in permitting the prosecution to use a peremptory strike to remove the only Hispanic panelist;

(2) whether the trial court committed reversible error by admitting hearsay as evidence; and

(3) whether the prosecutor committed misconduct during closing arguments.

## JURY PANEL

After conducting the voir dire of the jury venire, counsel exercised their peremptory strikes. Defense counsel objected to the prosecutor's strike of Virginia Carrillo, the only Hispanic person, citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90

---

**1.** The facts are taken in the light most favorable to sustaining the verdict. *State v. Zmich,* 160 Ariz. 108, 109, 770 P.2d 776, 777 (1989).

**2.** "Matelo para que no pueda hablar. Dame lo."

L.Ed.2d 69 (1986). At the trial court's request, the prosecutor gave the following reasons for striking Carrillo: (1) concern that she had an unstable employment history as she had lived in the county for nine years but had been employed for only six months as a file clerk; (2) her overly-enthusiastic response to the court during voir dire; (3) concern that she might be unduly sympathetic to the defendant because of her age of 41, her lack of children, the defendant's youthful appearance, and her secondary employment as a massage therapist; and (4) concern that the combination of her day job as a clerk and her evening employment as a massage therapist, which she had not disclosed until questioned by the court, resulted in her working too many hours to be an alert and effective juror.

The trial court observed that Carrillo's response was "quite enthusiastic, more so than any juror I have seen in quite awhile," and found that the prosecutor's speculation as to her sympathies was not racially related. It also noted that there had been no *Batson* problems with the three juries selected for the codefendant's trials by the same prosecutor. The motion then was denied.

The issue was renewed in the defendant's motion for new trial. The trial court once more concluded that Carrillo had been struck for "trial-related reasons" not associated with race. It remarked again upon Carrillo's singularly "extraordinary enthusiasm and apparent desire to be on this jury," finding that this reason alone would have supported a peremptory strike of her.

The defendant maintains that the prosecutor's reasons were insufficient to justify the trial court's conclusions, comparing Carrillo's answers to those of other venire members to show discrepancies between the prosecutor's strike of Carrillo and not of other jurors.

■ The state may not exclude any particular cognizable group from a jury panel for discriminatory reasons. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722; *State v. Reyes,* 163 Ariz. 488, 489, 788 P.2d 1239, 1240 (App.1989). Hispanic persons constitute a cognizable group for this purpose.

*Reyes,* 163 Ariz. at 490, 788 P.2d at 1241, citing *Castaneda v. Partida,* 430 U.S. 482, 495, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977). In evaluating an objection to a peremptory challenge, the trial court first must determine whether the defendant has made a prima facie showing that a peremptory strike of any member of a cognizable group has been made for discriminatory reasons. *Batson,* 476 U.S. at 94–98, 106 S.Ct. at 1721–1723; *State v. Boston,* no. 1 CA–CR 89–1273 (App.1991), slip op. at 3; *Reyes,* 163 Ariz. at 490, 788 P.2d at 1241. If a prima facie showing is made, the burden shifts to the state to explain the challenge with a neutral reason, one more than an affirmation of good faith or an assumption that the challenged juror would be partial to the defendant because of a shared identification. *Batson, id.; see Reyes, id.,* citing *State v. Tubbs,* 155 Ariz. 533, 537, 747 P.2d 1232, 1236 (App.1987). The court then must determine whether the prosecutor's stated reasons for the strike constitute a sufficiently neutral explanation or whether the defendant indeed has shown purposeful discrimination. *Batson,* 476 U.S. at 94–98, 106 S.Ct. at 1721–1723; *Boston,* slip op. at 3; *Reyes, id.*

The trial court, by requesting that the prosecutor state his reasons for the peremptory strike, apparently found that the defendant had made a prima facie showing of discrimination. *Reyes,* 163 Ariz. at 490, 788 P.2d at 1241. Therefore, we need only consider whether the reasons given by the prosecutor for the strike constituted a sufficiently neutral rebuttal. *Id.*

■ This court gives great deference to a trial court's finding that a prosecutor's reasons for a peremptory strike were non-discriminatory because such a finding turns on an evaluation of credibility. *State v. Jackson,* 157 Ariz. 589, 593, 760 P.2d 589, 593 (App.1988); *see Tubbs,* 155 Ariz. at 538, 747 P.2d at 1237. The trial court's decision on this issue is a finding of fact which will not be set aside unless clearly erroneous. *United States v. Hughes,* 911 F.2d 113, 114–15 (8th Cir.1990); *United States v. Alston,* 895 F.2d 1362, 1366–67 (11th Cir.1990); *United States v. Ruiz,* 894

F.2d 501, 506–7 (2d Cir.1990); *United States v. Clemmons*, 892 F.2d 1153, 1155 (3rd Cir.), cert. denied, 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990); *United States v. Power*, 881 F.2d 733, 739 (9th Cir.1989). A prosecutor's reasons for the exercise of a peremptory strike need not rise to the level necessary to support a strike for cause. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Power, id.* at 740.

■ One of the reasons that the prosecutor gave for striking Carrillo was that she had an unstable employment history. It is appropriate to consider a prospective juror's work history in exercising peremptory challenges. *United States v. Jackson*, 914 F.2d 1050, 1052–53 (8th Cir.1990) (prospective juror who was young, single, unemployed and without stable employment history stricken); *Haynes v. State*, 103 Nev. 309, 316–17, 739 P.2d 497, 502 (1987) (prospective juror with only two months work experience stricken).

The defendant argues that there were other persons on the venire with limited recent employment histories whom the prosecutor did not strike. The dynamics of the jury selection process make it difficult, if not impossible, on a written appellate record to evaluate or compare the challenge of one prospective juror with the retention of another person who on paper appears to be substantially similar. *People v. Johnson*, 47 Cal.3d 1194, 1221, 255 Cal. Rptr. 569, 579, 767 P.2d 1047, 1057 (1989). This is particularly so because the retention of a prospective juror normally does not provoke a discussion of that juror in contrast to the situation when a prospective juror is challenged. We agree with the trial court that consideration of Carrillo's work history was proper.

■ The prosecutor stated that Carrillo's overly-enthusiastic response to the court was another reason that he struck her from the jury. The trial court also noted this uncommon attitude, thereby corroborating the prosecutor's observations. It is permissible to rely on a prospective juror's mode of answering questions as a basis for peremptory selections. *Johnson*, 47 Cal.3d at 1217, 255 Cal.Rptr. at 576, 767 P.2d at 1054 (struck juror smiled at and appeared friendly toward defendants, did not look prosecutor in eye during questioning). Further, although it is inappropriate to simply allude to "feelings" about a juror, *United States v. Horsley*, 864 F.2d 1543, 1546 (11th Cir.1989) ("I just got a feeling about him"), it is appropriate to consider factors which reflect attitude. *United States v. John*, 780 F.2d 3, 5 (1st Cir.1985). These factors may range over a broad spectrum of information and impressions discerned during voir dire. *See Ruiz*, 894 F.2d at 506 (negative facial expressions, inappropriate headshaking, and not being particularly articulate acceptable explanations for peremptory strike); *United States v. Hawkins*, 781 F.2d 1483, 1485 (11th Cir.1986) (prospective juror "nervous" about making "wrong decision," preferred not to sit as juror); *Johnson*, 47 Cal.3d at 1217–18, 255 Cal.Rptr. at 576–77, 767 P.2d at 1054–55 (peremptory strike based on impression that prospective juror "a nervous person," "poorly groomed," "a very tired appearing person," or simply "weird" proper). In *Reyes*, this court found that when the prosecutor alleged that the prospective juror was "overwhelmed" and "might have trouble following the proceedings," the trial court's agreement with that assessment supported a nondiscriminatory finding. 163 Ariz. at 490–91, 788 P.2d at 1241–42.

Here, the observation of Carrillo's unusually enthusiastic behavior supports a nondiscriminatory finding. The trial court is in a position to observe matters that cannot be captured by a written appellate record, *Jackson*, 157 Ariz. at 593, 760 P.2d at 593; *Tubbs*, 155 Ariz. at 538, 747 P.2d at 1237, and the court concurred in the prosecutor's evaluation of Carrillo. Giving deference to the court's opportunity to observe the proceedings, we refuse to disturb its finding that this was a legitimate reason for striking Carrillo.

■ The prosecutor also was concerned that Carrillo might be overly sympathetic to the youthful-looking defendant. As long as it is not based upon race, *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719, perceived

sympathy on the part of a prospective juror toward a defendant is a legitimate basis for a peremptory strike. *United States v. Johnson*, 905 F.2d 222, 223 (8th Cir.) (proper to strike prospective juror who worked with Division of Family Services because of possible sympathy toward defendant), cert. denied, — U.S. —, 111 S.Ct. 304, 112 L.Ed.2d 257 (1990); *United States v. Briscoe*, 896 F.2d 1476, 1488 (7th Cir.1990) (prospective juror struck because prosecutor feared that prior job as youth supervisor at penal facility would make her sympathetic to defendant); *United States v. Moreno*, 878 F.2d 817, 820 (5th Cir.) (prospective juror had hostile attitude toward police), cert. denied, 493 U.S. 979, 110 S.Ct. 508, 107 L.Ed.2d 510 (1989); *United States v. Tindle*, 860 F.2d 125, 129 (4th Cir.1988) (prospective juror struck because similar in size and appearance to defendant arguing mistaken identification because of size and appearance), cert. denied, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1038 (1989); *United States v. McCoy*, 848 F.2d 743, 745 (6th Cir.1988) (prospective juror excluded because young and unemployed like defendant); *State v. Williams*, 545 So.2d 651, 655 (La.App.1989) (prospective juror struck because she gazed at defendant and his mother in sympathetic manner), writ denied, 556 So.2d 53 (La.1990). We agree with the trial court that this was an appropriate, neutral explanation for the peremptory strike.

Finally, the prosecutor stated that another reason he dismissed Carrillo was because he feared that, after working two jobs, she would not be alert and oriented for her duties as a juror. Striking a prospective juror because of perceived or anticipated fatigue is acceptable. *Davis v. State*, 560 So.2d 1346, 1347 (Fla.App.1990) (proper to strike prospective juror who fell asleep during voir dire); *People v. Harris*, 129 Ill.2d 123, 175, 135 Ill.Dec. 861, 884, 544 N.E.2d 357, 380 (1989) (sickly and disabled juror dismissed because prosecutor feared she would be unable to pay attention throughout trial); *see also United States v. Ratcliff*, 806 F.2d 1253, 1256 (5th Cir.1986) (prospective juror who fell asleep during voir dire, had prior Internal Reve-

nue problem, and who had taught tax preparation classes properly struck), cert. denied, 481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199 reh. denied, 481 U.S. 1072, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987).

We find that the defendant has failed to show that the trial court clearly erred in finding that none of the reasons set forth by the prosecutor for striking prospective juror Carrillo was based upon her race.

## TESTIMONY

At trial, Villareal testified that he had heard an unknown person say that unnamed "others" were going to beat up Briggs. Defense counsel objected to the testimony on the basis that it was hearsay. The prosecutor responded that he offered it only to explain what Villareal next did and not for the truth of the matter asserted. The trial court allowed the testimony. On appeal, the defendant claims that, even if not hearsay, this testimony should have been excluded because it denied him the opportunity to confront witnesses against him and because it proved premeditation.

The offered testimony was not hearsay; the extrajudicial utterance was not offered as proof of the matter asserted. *State v. Rivera*, 139 Ariz. 409, 413, 678 P.2d 1373, 1377 (1984). Words offered to prove the effect on the hearer are admissible when they are offered to show their effect on one whose conduct is at issue. *Id.* at 414, 678 P.2d at 1378. Villareal's testimony explained the reason he spoke with the bartender, why the bartender warned Briggs, and why Briggs left the bar. It also was relevant to explain Villareal's conduct in later watching the scene from the bar door. The truth of these statements was not the question; it was their effect upon the listeners (Villareal, the bartender, and Briggs) that was at issue.

The defendant also claims that admission of these statements from undisclosed sources violated his right to confront witnesses against him. Amend. VI, U.S. Constitution; Art. 2, Sec. 24, Arizona Con-

stitution. However, to preserve a constitutional question for review, it must have been properly asserted in the trial court. *State v. Tison,* 129 Ariz. 526, 534, 633 P.2d 335, 343 (1981), cert. denied, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982); *State v. Politte,* 136 Ariz. 117, 123, 664 P.2d 661, 667 (App.1982). The defendant did not object to this testimony at trial as violative of the confrontation clause.

 Although we still review this issue for fundamental error prejudicial to the defendant, A.R.S. § 13–4035; *Politte,* 136 Ariz. at 123, 664 P.2d at 667, here we find no error. Testimony not admitted to prove the truth of the matter asserted by an out-of-court declarant is not hearsay; the admission of such testimony does not violate the confrontation clause. *White v. Lewis,* 874 F.2d 599, 603 (9th Cir.1989) (testimony of police officer regarding statements of unidentified person at crime scene); *State v. Spinks,* 156 Ariz. 355, 359, 752 P.2d 8, 12 (App.1987) (admission of transcripts of grand jury witnesses' testimony); *State v. Hauss,* 142 Ariz. 159, 164–65, 688 P.2d 1051, 1056–57 (App.1984) (introduction of tape recording of defendant's girlfriend at trial). Villareal only testified that someone told him that others were going to beat up Briggs. These statements did not identify the defendant either as the person who had issued the threat against Briggs or as the one who intended to harm Briggs; they only showed how events unfolded.

 The defendant, citing *State v. Cruz,* 128 Ariz. 538, 540, 627 P.2d 689, 691 (1981), also argues that the testimony, even if admissible, should have been kept out because it proves premeditation, which is an element of the offense of which he was convicted. The defendant did not raise this objection at trial, and therefore he has waived this issue on appeal. *State v. Neal,* 143 Ariz. 93, 100, 692 P.2d 272, 279 (1984). When evidence objected to on one ground is admitted over objection, other grounds not specified are waived, absent fundamental error. *Id.*

No fundamental error occurred here. In *Cruz,* the supreme court found that evi-

dence admissible for impeachment purposes should have been kept out as inordinately prejudicial because it related directly to the guilt of the defendant. 128 Ariz. at 540, 627 P.2d at 691. *Cruz* is distinguishable from this case, however. The objectionable testimony in *Cruz* was admissible only for the limited purpose of impeachment under Rule 801(d)(1), *A.R.Evid.,* and *Cruz* also dealt with admissions by the defendant that directly related to the defendant's guilt. *Id.* at 539–40, 627 P.2d at 690–91. *See State v. Allred,* 134 Ariz. 274, 277–78, 655 P.2d 1326, 1329–30 (1982) (unfair prejudice in use of impeachment testimony indicated if true purpose of offer is substantive use of statement rather than impeachment of witness or if impeachment testimony is only evidence of guilt); *see generally* M. Udall and J. Livermore, *Law of Evidence* § 124 (2d ed.1982). Here, Villareal's statements simply were admitted to show why he and others acted as they did. They did not implicate the defendant. We find that no fundamental error occurred in admitting Villareal's statements.

## PROSECUTORIAL MISCONDUCT

The defendant contends that the prosecutor committed misconduct during rebuttal closing argument by vouching for his witnesses and by shifting the burden of proof and suggesting that the defendant must prove his innocence.

 The defendant did not object to the prosecutor's statements; therefore, this issue is waived on appeal absent fundamental error. *State v. Van Den Berg,* 164 Ariz. 192, 196, 791 P.2d 1075, 1079 (App. 1990). In order to constitute fundamental error, the prosecutor's comments had to be so egregious as to deprive the defendant of a fair trial and render the resulting conviction a denial of due process. *Id.*

 Expressions of the prosecutor's personal opinions as to a defendant's guilt or innocence are improper. *United States v. Young,* 470 U.S. 1, 7, 105 S.Ct. 1038, 1042, 84 L.Ed.2d 1 (1985); *Van Den Berg, id.* However, prosecutorial comments which are fair rebuttal to areas opened by

the defense are acceptable. *State v. Alvarez,* 145 Ariz. 370, 373, 701 P.2d 1178, 1181 (1985); *see State v. Jaramillo,* 110 Ariz. 481, 483, 520 P.2d 1105, 1107 (1974).

> [A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.

*Young,* 470 U.S. at 11, 105 S.Ct. at 1044; *see id.* at 12, 105 S.Ct. at 1044.

■ During the defendant's closing argument, defense counsel stressed how Mendoza had a motive to lie because he had been charged with this murder and the charge had been dismissed, implying that the dismissal was in exchange for Mendoza's (false) testimony against the defendant. In rebuttal, the prosecutor stated:

> Let's start with Hector Mendoza. Now, I told you earlier on about the obligations of the prosecutor, and one of the obligations is that *you don't charge such a serious crime of murder unless you have the proof and the evidence to back it up.* It's just too serious a charge against any one individual, and one must exercise a great deal of prosecutorial discretion. [Emphasis added.]
>
> Now, Hector Mendoza, when he came over here, if you will recall, the testimony of himself and Detective Kelley was that he was charged and he willingly came back because he wanted to tell the story. But the crucial part was that if anything at all could be done—and no promises were made; he had to tell the truth, and he was not involved. And based upon what he told Detective Kelley, and he testified in front of you and the physical evidence and the other corroborative evidence, he was indeed not involved.

The prosecutor was attempting to explain that the murder charge against Mendoza had been dismissed not in exchange for Mendoza's testimony, but because after Mendoza had told his story to Detective Kelley, the prosecutor did not believe that

a case against Mendoza should be pursued. With the appellate advantage of hindsight and reflection, the point could have been more artfully made. The language can be construed as vouching for the strength of the state's case, although in context the comments were intended to explain why Mendoza was not charged, not why Hernandez was charged. Nonetheless, this constituted vouching for the witness by going outside the record. There was no objection to the comment, however, and it does not constitute reversible error. *See United States v. Martin,* 815 F.2d 818, 822 (1st Cir.) (rebuttal statement of "they told you the truth" literally was vouching but in context was rhetoric and harmless error), cert. denied, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 51 (1987).

■ Defense counsel stressed, in his closing argument, how intoxicated Briggs, the defendant and all of the witnesses were on the night in question. Defense counsel added that "[h]ad none of these people gone to the Roadhouse and gotten intoxicated, none of this probably would have happened." In rebuttal, the prosecutor stated that it was the defendant who the jury was to judge; "[i]f he hadn't shot and killed [Briggs], the defendant wouldn't be here. You are to judge his actions." The prosecutor's argument was fair rebuttal to defense counsel's argument. He did not improperly vouch for any witness and he did not impermissibly shift the burden of proof to the defendant.

■ Finally, the closing arguments and the jury instructions must be considered together in determining whether the prosecutor's statements constituted fundamental error. *See State v. Tuzon,* 118 Ariz. 205, 208, 575 P.2d 1231, 1234 (1978). The trial court instructed the jury at the beginning of the trial and again before its deliberations that the arguments of counsel were not evidence, but that they might help to understand the law and the evidence. The jury also was instructed that the defendant is presumed to be innocent, that he is not required to prove his innocence or produce any evidence, and that the burden of proving the defendant guilty beyond a reason-

able doubt rests upon the state. In his closing arguments, the prosecutor reminded the jury of those instructions, adding at least once that his arguments were not evidence: "My opinions don't count. Yours does." We find that the defendant has failed to show that the rebuttal argument made by the prosecutor contained fundamental error.

This court, pursuant to A.R.S. § 13–4035, has fully reviewed the record and finds no reversible error. For the foregoing reasons, the defendant's conviction and sentence are affirmed.

FIDEL and TAYLOR, JJ., concur.