NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

GLENN ANTHONY SCHMITZ, *Appellant*.

No. 1 CA-CR 21-0443
FILED 10-27-2022

---

Appeal from the Superior Court in Maricopa County
No.  CR2020-001846-001
The Honorable Timothy J. Ryan, Judge

**AFFIRMED AS MODIFIED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Vice Chief Judge David B. Gass joined.

---

**B A I L E Y**, Judge:

¶1 Defendant Glenn Schmitz appeals his convictions and sentences for multiple sex crimes against five minors. For the following reasons, we affirm as modified to correct some technical portions of the sentencing order the parties agree should be corrected.

### FACTS AND PROCEDURAL HISTORY

¶2 Between 1999 and 2004, Schmitz lived with his wife and their three children—two sons and a younger daughter. Friends and acquaintances of the Schmitz children often visited the Schmitz house during that time. Schmitz and his wife separated in 2006 and divorced in 2007, when their children were approximately 15 to 19 years old.

¶3 In 2018, Dawn,[1] who had grown up in the area, reported to law enforcement that Schmitz had touched her inappropriately at the Schmitz home years before. After police interviewed Dawn, they contacted other women who had frequented the Schmitz house around the same time frame—including Yaria and Sarah, who had been close friends with Schmitz's daughter, and Caroline, a close friend of Schmitz's older son. Another woman, Claire, contacted the police about Schmitz after seeing a news report on his arrest.

¶4 The State charged Schmitz with 25 counts of sexual conduct with a minor, sexual abuse, and molestation of a child committed on various dates ranging between May 1999 through August 2004. Eight counts pertained to Dawn, four to Yaria, four to Caroline, six to Sarah, and three to Claire. All five of those victims, as well as Schmitz's three children and ex-wife, testified at his trial. A sixth victim, Stacey, was not a subject

---

[1] We use pseudonyms to protect the victims' privacy. *See generally* Ariz. R. Crim. P. 31.10(f).

of charged conduct but testified at trial under Arizona Rule of Evidence ("Rule") 404(b) and (c).

¶5　　　　Dawn and Claire testified that Schmitz inserted his fingers into their vaginas and touched their breasts under the guise of throwing the girls into the pool or playing water games. Caroline and Sarah testified that Schmitz touched their breasts and vaginas by the pool and inside the Schmitz home. Yaria testified that Schmitz touched her breasts and vagina while she was riding in his truck. Stacey, the Rule 404 witness, testified that Schmitz grabbed her breasts while tossing her into a lake during an outing in 2002. That incident was reported to law enforcement at the time, but no charges were filed.

¶6　　　　After the State presented its case at trial, it moved to amend the indictment by altering the offense date for one count and dismissing three others. The court granted the motion, which led to the dismissal of three counts pertaining to Dawn. The jury found Schmitz guilty of four counts of sexual conduct with a minor, thirteen counts of sexual abuse, three counts of child molestation, and one count of contributing to the delinquency of a minor (a lesser-included offense). The jury found Schmitz not guilty of one sexual abuse charge. The superior court sentenced him to consecutive terms totaling two life sentences plus 129.5 years' imprisonment.

¶7　　　　We have jurisdiction over Schmitz's appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

I.　　Prior Consistent Statements

¶8　　　　Schmitz argues the superior court improperly admitted prior consistent statements in violation of the rule against hearsay. Although we generally review evidentiary rulings for an abuse of discretion, Schmitz did not object to this testimony, meaning he must establish the admission was fundamental, prejudicial error. *State v. Boggs*, 218 Ariz. 325, 334, ¶ 38 (2008); *State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018).

¶9　　　　Out-of-court statements offered to prove the truth of the matter asserted are generally inadmissible under the rule against hearsay. Ariz. R. Evid. 801(c), 802. But Rule 801(d)(1)(B) provides that a declarant-witness's prior out-of-court statement is not hearsay if "[t]he declarant testifies and is subject to cross-examination about [the] prior statement," the

statement "is consistent with the declarant's testimony," and the statement is offered "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." The Arizona Supreme Court has found that a statement is admissible under subsection (i) only if the witness "make[s] the prior consistent statement before the existence of facts that indicate a bias arises." *State v. Martin*, 135 Ariz. 552, 554 (1983).

¶10　　　The essence of Schmitz's defense at trial was that, after the victims heard rumors or accusations about him sexually assaulting others, the victims recharacterized, in their own minds, his innocent or accidental conduct as intentionally sinister acts. Schmitz suggested that his children came to believe the victims' accounts of abuse over time because they resented his poor treatment of them after he and their mother divorced. Schmitz now contends that the admission of certain prior statements by his daughter violated Rule 801(d)(1)(B)(i) because the superior court did not first determine, on its own motion, that she made the statements before developing a bias against Schmitz. *See id.* at 555.

¶11　　　The first challenged statement—which was to the effect of "dad molested all my friends"—was repeated, in different variations, by multiple witnesses. Schmitz's older son testified that, when he was in his mid-20s and his sister was approximately 18 to 20 years old, she "start[ed] to just kind of flippantly talk about how my dad touched all of her friends." The older son recalled that his sister specifically mentioned Yaria and Sarah but also "just kind of worked with the general sense of he touched all my friends." Based on his sister's statements, Schmitz's older son asked Caroline—who had been his best friend since childhood—whether Schmitz had done anything to her. The older son testified that Caroline confirmed Schmitz had done so, without providing details. Caroline also testified about that same conversation with Schmitz's older son—who was the first person to whom she disclosed Schmitz's conduct. She testified that he asked about Schmitz because "at that point [his sister] . . . had talked to [him] before about like, you know, some of my friends they say that, you know, dad touched them inappropriately, or dad molested them, and that wasn't something that [the older son] wanted to believe."

¶12　　　Schmitz's daughter also testified about making a similar statement to a detective investigating the case. On cross-examination, defense counsel asked the daughter whether she told the detective that Schmitz "probably molested all [her] friends while they were teenagers." The daughter answered, "Yes." The State referred to that testimony on

redirect, and the daughter confirmed that when the detective asked her if she knew why he was contacting her, she told him it was "probably [her] creepy dad that molested all [her] friends."[2]

¶13 Schmitz also challenges testimony by Yaria. She stated that at some point after Schmitz molested her, she "got a call from [his daughter] saying that [Sarah] and [another girl around the same age] might know something about Mr. Schmitz touching people." Yaria contacted the other girls, and they decided to call Schmitz's wife. But Yaria said when she was making that call, her mother came in and Yaria explained to her mother that the other girls were planning to tell Schmitz's wife "that Mr. Schmitz had been touching us, and [Yaria's] mother took over the call from there." Yaria testified that her mother did not proceed with the call or otherwise do anything in response to Yaria's disclosure about Schmitz.

¶14 Although the State and Schmitz exchange arguments over whether the challenged testimony was admissible under Rule 801(d)(1)(B), most of the statements appear to fall outside the rule against hearsay entirely because they were not offered "to prove the truth of the matter asserted in the statement." Ariz. R. Evid. 801(c)(2). Caroline and Schmitz's older son each testified about the daughter's prior statement not to prove that Schmitz molested all his daughter's friends but to provide context for the older son's conversation with Caroline about Schmitz's prior acts against her. *See, e.g.*, *State v. Hernandez*, 170 Ariz. 301, 306 (App. 1991) ("Words offered to prove the effect on the hearer are admissible when they are offered to show their effect on one whose conduct is at issue." (citation omitted)). Similarly, Yaria's testimony was offered not to prove that Schmitz molested other girls, but to explain what Yaria knew and told others about Schmitz's conduct at the time.

¶15 Nonetheless, even if we assume the statements attributed to Schmitz's daughter were "prior consistent statements" subject to Rule 801, we reject Schmitz's claims of reversible error because he does not establish prejudice—which requires him to show that a reasonable jury could have

---

[2] Because Schmitz's daughter's statement to the detective was first elicited by the defense on cross-examination, Schmitz waived any challenge to the same statement being elicited on redirect. *See State v. Maggard*, 104 Ariz. 462, 465 (1969) (observing that inadmissible testimony is invited error when elicited by defense counsel); *cf. United States v. Anderson*, 532 F.2d 1218, 1229 (9th Cir. 1976) (finding that the defendant waived an objection to hearsay evidence where he opened the door by being the first to offer the evidence).

reached a different verdict if the statements had been excluded. *Escalante*, 245 Ariz. at 144, ¶ 30. First, none of the statements operated as a replacement for, or supplement to, the victims' trial testimony about Schmitz's conduct. Second, Schmitz's daughter was thoroughly cross-examined and admitted she (1) did not witness any of the charged acts, (2) recalled only one instance during her childhood of a victim telling her that Schmitz touched her inappropriately, and (3) had a strained relationship with Schmitz. Any error in admitting the statements, even if fundamental, did not prejudice Schmitz on this record. *See State v. Hoskins*, 199 Ariz. 127, 144, ¶ 66 (2000) (concluding that any error in admitting a prior consistent statement was harmless where the statement was cumulative of other evidence and the declarant "was subjected to thorough cross-examination"), *abrogation on other grounds recognized by McKinney v. Ryan*, 813 F.3d 798, 815 (9th Cir. 2015).

II.     Comments on Witness Credibility

**¶16**      Schmitz next contends that three witnesses made statements during the State's examination that impermissibly vouched for witness credibility. Again, because Schmitz did not object at trial, he must establish that the statements' admission was fundamental, prejudicial error. *See Escalante*, 245 Ariz. at 138, ¶ 1.

**¶17**      Schmitz first challenges Caroline's statements that referred to Stacey, the State's Rule 404 witness who had reported inappropriate conduct by Schmitz in 2002. Caroline was Stacey's friend and testified that she heard about Stacey's accusation when it happened from Schmitz's older son. Caroline testified that Schmitz's older son defended his father at the time and that Caroline, too, went along with the story that Stacey had made up the accusation even though "I think at that time I knew she wasn't lying because it had been happening to me." Caroline elaborated that the incident brought out "a lot of mixed emotions" and conflicting motivations that led her to go "along with the narrative that I knew wasn't true." She added, "It's like I knew [Stacey] was telling the truth, [but] I didn't want to lose my stability." When the incident with Stacey was raised again on redirect, Caroline testified that hearing about Stacey's accusation "was that first moment that I couldn't—I couldn't excuse what [Schmitz] was doing anymore. . . . I couldn't from that point on continue convincing myself that it was just an accident . . . ."

**¶18**      Schmitz also challenges Claire's statements. The State elicited evidence that Claire had been convicted of a felony several years earlier and had told a presentence report writer that she was sexually abused by a

family friend when she was 11 years old. When the State asked whether she told the report writer "the truth," Claire answered, "Yes."

¶19        Finally, Schmitz challenges his daughter's statement. On redirect, the State referred to the daughter being cross-examined about not remembering certain things from years back. The State asked the daughter whether the fact that she did not recall seeing certain victims, such as Dawn and Claire, at the house meant they were never there. The daughter responded by saying she could not remember, she was "not saying that [the victim] wasn't there at all." She added, "Oh, I guarantee you, if they're saying it happened, it happened."

¶20        A witness may not testify about another witness's truthfulness. *Boggs*, 218 Ariz. at 335, ¶ 39. "Determining veracity and credibility lies within the province of the jury, and opinions about witness credibility are 'nothing more than advice to jurors on how to decide the case.'" *Id.* (quoting *State v. Moran*, 151 Ariz. 378, 383 (1986)).

¶21        Even so, Schmitz does not establish fundamental, prejudicial error. First, he shows no error as to Claire's statement because her testimony commented on her own truthfulness—not that of another witness. *Cf. United States v. Freitag*, 230 F.3d 1019, 1024 (7th Cir. 2000) (observing that counsel may ask "a witness to remark on the truthfulness of her own testimony [without invading the province of the jury] because the witness's reaction and response are proper fodder for the jury's credibility determinations"). Nor does Schmitz show reversible error as to Caroline's statements. Caroline's testimony was not offered to bolster or comment on the truthfulness of Stacey's testimony, but to explain how hearing about Stacey's accusation affected Caroline's own conduct and interpretation of Schmitz's behavior toward her. *Cf. State v. Doerr*, 193 Ariz. 56, 63, ¶ 26 (1998) (determining that a witness's opinion about another's truthfulness is admissible if the opinion is not intended to comment on the other's credibility, is rationally based on the witness's perception, and could help the jury understand the witness's testimony or determine a fact in issue).

¶22        Even if the statement by Schmitz's daughter crossed the line by commenting on other witnesses' truthfulness, Schmitz fails to establish that the challenged statement—or those of Claire and Caroline for that matter—prejudiced him. In determining whether a reasonable jury could have reached a different verdict without the challenged testimony, we "examine the entire record, including the parties' theories and arguments as well as the trial evidence." *Escalante*, 245 Ariz. at 144, ¶ 31 (citations

omitted). Here, the challenged statements were largely immaterial because Schmitz's defense was not that the victims were lying but that they suffered from "a mistaken but genuine belief that something [inappropriate] happened." In addition, after the court sustained a defense objection to testimony by Schmitz's older son about his belief in the victims' accounts, the court also instructed the jury that "we do not have witnesses testify as to the credibility or vouch for other witnesses," such testimony is "not appropriate," and jurors should not give it "any consideration." The court also instructed the jurors that it was up to them to decide "what testimony to accept and what to reject." We presume that jurors complied with these instructions. *See State v. Martinez*, 230 Ariz. 382, 385, ¶ 14 (App. 2012).

III.    Jury Finding of Victim's Age

**¶23**    Dawn testified that Schmitz digitally penetrated her in the summer of her seventh or eighth grade year—when she would have been 13 or 14 years old. The superior court sentenced Schmitz to 20 years' imprisonment for that offense (Count One)—the presumptive term for sexual conduct with a minor when the victim is 13 or 14 years old. *See* A.R.S. § 13-604.01(C) (1999-2000). Schmitz now argues he must be resentenced as though Dawn were 15 or older because the jury did not make a specific finding of her age when it rendered the verdict. Because Schmitz did not object at the time of sentencing, he must establish fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, 563, ¶ 1 (2005).

**¶24**    Schmitz's claim fails because the jury implicitly found Dawn to be under 15 at the time of the offense when it found him guilty and no "reasonable jury" could have found otherwise on this record. *See id.* at 569, ¶¶ 27–28. The jury found Schmitz guilty of five charges pertaining to Dawn—the single count of sexual conduct with a minor and four counts of sexual abuse. The indictment alleged that all five offenses took place when Dawn was "a minor under fifteen years of age." Dawn testified that all the conduct occurred during the same period, the court instructed the jury that the sexual abuse counts required the State to prove Dawn was under 15, and the verdicts for those four counts specified that the offenses occurred in Dawn's "7th grade summer" and "8th grade summer." Considering the indictment, trial evidence, instructions, and verdicts in this case, the jury verdict on Count One implicitly encompassed a finding that Dawn was under 15 when Schmitz committed the crime. *Cf. State v. Ring*, 204 Ariz. 534, 559–60, ¶ 74 (2003) ("[T]he age of the victim can be implicit in the verdict, if the jury simultaneously convicts the defendant of an offense that

includes the age of the [] victim as an element of the crime.").  No reasonable jury could have found Dawn to be 15 or older on this record.

IV.     Errors in Sentencing Order

**¶25**        Schmitz asks this court to correct three alleged errors in the sentencing order: (1) the offense date for Count One; (2) that he waived the right to be present at some future restitution hearings, and (3) not specifying that his "life" sentences are release-eligible after 35 years.  The State agreed with Schmitz's argument.

**¶26**        We can correct clerical and similar errors in sentencing orders on appeal.  *See State v. Vandever*, 211 Ariz. 206, 210, ¶ 16 (App. 2005), *disapproved on other grounds by State v. Aragon ex rel. Pima Cnty.*, 252 Ariz. 525, 531, ¶ 20 (2022).  We address each alleged error in turn.

**¶27**        First, the original indictment specified that Count One occurred "on or between May 1, 1999 and August 31, 1999"—which is the same date range provided in the sentencing order.  During trial, however, the superior court amended the indictment by extending the date range on Count One to August 31, 2000.  We agree with Schmitz and modify the sentencing order to show that the offense date for his conviction on Count One runs from May 1, 1999, to August 31, 2000.

**¶28**        Second, when Schmitz was sentenced, he expressly requested to be present at any future restitution hearing.  Accordingly, the sentencing order is modified to reflect that he did not waive his presence as to any counts.

**¶29**        Third, the jury found that Schmitz committed two counts of sexual conduct with a minor against Claire when she was 12 years old or younger.  Based on that age finding and the underlying facts of the offense, A.R.S. § 13-604.01(A) (2000) required the superior court to sentence Schmitz to two terms of "life imprisonment" with no "eligib[ility] for suspension of sentence, probation, pardon or release from confinement on any basis except as specifically authorized by section 31-233, subsection A or B until the person has served thirty-five years or the sentence is commuted."  At the sentencing hearing, the court orally imposed "life in prison" for each conviction, and the sentencing order described each sentence as a "term of life" without reference to the applicable sentencing statute or any possible release after he serves thirty-five years.  Thus, we modify the sentencing order to reflect that each of Schmitz's life sentences is pursuant to A.R.S. § 13-604.01(A) (2000).

## CONCLUSION

¶30     We modify the sentencing order as set forth above and otherwise affirm Schmitz's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA